555 So.2d 519 (1989)
STATE of Louisiana
v.
Darren JAMES.
No. 88-KA-0269.
Court of Appeal of Louisiana, Fourth Circuit.
December 14, 1989.
*521 Harry F. Connick, Dist. Atty., Val M. Solino, Asst. Dist. Atty., New Orleans, for State of La.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for Darren James.
Before LOBRANO, WARD and WILLIAMS, JJ.
WARD, Judge.
A unanimous jury convicted Darren James of the first degree murder of Mrs. Patricia Lobough and sentenced him to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. James appeals his conviction and sentence and has filed a pro se brief arguing five assignments of error; his appellate counsel argues two.
On January 8, 1987 Mrs. Patricia Lobough was shot and killed in Armstrong Park. Although no one witnessed the murder, Angela Poole, an employee of a radio station located in Armstrong Park, hearing what she thought was a lawn mower backfiring, glanced out of her office window and noticed a tall, light-skinned black male run out of the park. While Ms. Poole could not see the man's face, she did observe his clothing and saw him run between some houses adjacent to the park appearing to hold something under his jacket.
Pursuant to Ms. Poole's observations, Officer Santussoso began searching the adjacent area and found a jacket fitting the description given by Ms. Poole under Darren James' residence at 1028 St. Claude Avenue. After finding the jacket, the officer spoke with James James, the defendant's uncle who also lived at the St. Claude address. Officer Santussoso brought James James and April James, the defendant's sister, to the First District Station for questioning by Detective Melvin Winins. From information supplied by April James, the police obtained an arrest warrant for Darren James. Two weeks later Darren James surrendered himself to the authorities.
*522 Appellate counsel contends the trial court erred in allowing Detective Winins' testimony into evidence because it contained "indirect hearsay and brought out an opinion of a judge."
Detective Winins testified that he obtained a warrant for James' arrest based upon comments made by James' sister, and that a magistrate signed the warrant.
A review of Detective Winins testimony shows he did not repeat the substance of any out of court statement made to him. He simply explained that he interviewed April James and then went on to say what he did after the interview. No hearsay evidence was admitted. Winins merely explained the justification for the arrest of James. Had he not done so, the jury may have questioned his authority. The explanation in this case was entirely proper. Counsel's argument is meritless.
Appellate counsel also contends error at trial because the Trial Court allegedly permitted a judicial comment on the evidence, which he claims is prohibited by C.Cr.P. art. 772. The testimony which the appellate counsel contends brought out "an opinion of a judge" was given in response to questions of Mr. McMahon, the assistant district attorney:
BY MR. MCMAHON:
Detective Winins, was the arrest warrant that was prepared presented to a Magistrate?
A. Yes, it was.
Q. Did the Magistrate review that warrant?
A. Yes, he did.
Q. Did the Magistrate sign that warrant?
A. Yes, he did.
Q. No further questions.
The defense further complains that the Trial Court allowed the State "to go on to explain that the magistrate thought the evidence sufficient for issuance of the warrant." The record does not support this contention. Furthermore, defense counsel's assertion that Detective Winins' testimony that a magistrate signed the warrant violates C.Cr.P. art. 772, which prohibits a trial judge's comment on the evidence in a case, is an erroneous and strained interpretation of that article. Detective Winins' statement that a magistrate signed the arrest warrant is not equivalent to a judge commenting before a jury that probable cause existed for the arrest. By its terms C.Cr.P. 772 is directed to comments by the Trial Judge on the evidence produced in trial. It does not address the question of a showing that a magistrate found probable cause. This argument is also meritless.
The first of James' pro se assignments attacks the testimony of his first cousin, Chris Woods[1], as perjured.
To support this contention, James points out that Woods at first refused to testify against him and in fact did not decide to do so until after Woods was convicted of an unrelated crime.
At trial, Woods recounted that on the day of the murder, James came to him between 9:00 a.m. and 9:30 a.m. to enlist Woods' aid in leaving the city. Woods further testified that James' told him he shot a lady he was attempting to rob in Armstrong Park when she sprayed him with mace. Woods noted that James' left eye was red and tears were streaming from it. At James' request, Woods took him first to the bus station and finally the airport where Woods borrowed money from a friend to pay for James' airline ticket. Before James' departure on his flight, he asked Woods to retrieve both his (James') jacket which he had hidden under the St. Claude Avenue house and James' gun, buried in the same backyard. Woods testified he did not comply with James' requests.
Other testimony revealed that James went to Alabama where he stayed with Mrs. Glenda James, his sister-in-law. She recounted that at first James told her he witnessed a shooting in Armstrong Park but later changed his story, telling her a *523 woman sprayed mace in his face in the park.
The State on direct examination had Woods explain to the jury all of the facts surrounding his agreement to testify. Likewise, the defense fully cross-examined Woods' motive for testifying. Moreover, both the State and defense questioned the attorney who defended Woods on the armed robbery charge concerning the reasons and circumstances leading to Woods' testimony in the murder trial. Thus, the jury was well aware of the circumstances under which Woods agreed to testify. The jury apparently viewed Woods as a credible witness and weighed his testimony in favor of the State. We find no merit in this assignment.
Next, James argues his conviction rests upon insufficient circumstantial evidence.
In assessing the sufficiency of the evidence to support a conviction, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found proof, beyond a reasonable doubt, of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Additionally, when circumstantial evidence forms the basis of the conviction, the evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1983). Although La.R.S. 15:438 requires that when a case rests entirely on circumstantial evidence the elements of the crime must be proven so that every reasonable hypothesis of innocence is excluded, the statute is not a separate test from Jackson, supra, but rather an evidentiary guideline to facilitate appellate review and application of the Jackson test to determine whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, whether direct or circumstantial, must meet the Jackson standard.
Thus, in order to sustain the first degree murder conviction, the state bears the burden of proving, beyond a reasonable doubt, that James specifically intended to kill or inflict great bodily harm on Mrs. Lobough while engaged in the perpetration or attempted perpetration of armed robbery.
Our review of the record convinces us the State met its burden. James admitted to Chris Woods that he shot Mrs. Lobough while attempting to rob her. James also made incriminating statements to his sister-in-law. His guilt is further shown by Ms. Poole's testimony that the tall, black man she saw run past her office window wore a red and black jacket and the fact other witnesses verified James wore a jacket on previous occasions like the one Ms. Poole described and the one later found under James' residence.[2]
Finally, James' intent to kill or seriously injure the victim is proven by the coroner's testimony that Mrs. Lobough was shot in her face when the gun was held approximately two inches from her nose.
This assignment is meritless.
James next argues that the State made the following prejudicial comment in closing argument:
You remember when Darren James took that little look. He realized that Angela Poole saw him. That's why he got out of town so fast. That's corroboration. That's corroboration of Chris Woods. You may say, `Well, wait a minute now. I think there was something about that on the media. Huh huh. Darren James was out of New Orleans. He was on a plane at 35,000 feet, heading up to New England, when news of this broke on the media.' And, there was no account on the media about Angela Poole at WWOZ.
James contends that the State's reference to the fact the media did not report *524 that Ms. Poole saw the perpetrator refers to a fact not admitted into evidence in violation of C.Cr.P. art. 774.
During trial, the defendant's sister-in-law testified that she could not remember whether the defendant told her a woman saw him flee the park or whether she heard that information on the media. The defendant maintains that the State made the comment to his detriment to imply that he must have actually told his sister-in-law someone saw him shoot the victim instead of her hearing this fact through the media.
Defendant's argument has no merit. Even if a comment falls outside the scope of argument, mistrial is not warranted unless the court is thoroughly convinced both that the jury was influenced by the comment and that the comment contributed to the verdict. State v. Winn, 412 So.2d 1337 (La.1982). The trial court's determination that a mistrial is not warranted is discretionary and will not be disturbed absent an abuse of discretion. State v. Harper, 430 So.2d 627 (La.1983). Considering the other substantial evidence of the defendant's guilt, it is unlikely the objectionable comment, even if outside the scope of evidence, influenced the jury's verdict.
James' final two assignments charge error in the trial court's failure to grant a mistrial when informed that a juror was acquainted with Chris Wood's sister and further contends that he received ineffective assistance of counsel because his attorney waived his right to be present at the evidentiary hearing on the removal of jurors.
On the third day of trial, the Court learned from an outside party that a juror, Ms. Schaffer, had not informed the Court during voir dire that she worked with Chris Wood's sister, and might have learned things about the case which would possibly cast her as a biased juror. The Court conducted an evidentiary hearing which the Judge, District Attorney, Ms. Schaffer and defense counsel attended. The defendant's attorney specifically waived defendant's presence at the hearing. Ms. Schaffer confirmed that she worked with Chris Woods' sister and knew of the family connection but stated this knowledge would not influence her judgment. Nevertheless, to remove any appearance of impropriety, the Judge removed Ms. Schaffer from the jury.
It was error not to require the defendant's presence at this hearing. C.Cr.P. art. 831 reads in part:
Presence of defendant when prosecution is for felony
A defendant charged with a felony shall be present:
* * * * * *
(3) At the calling, examination, challenging, impanelling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror; ...
But in this case, because the juror was excused, no possible harm could result from the error. In this unusual case, the error will not be considered reversible error. Thus, this assignment is meritless.
Generally, a claim of ineffective assistance of counsel should be treated in an application for post conviction relief, State v. Truitt, 500 So.2d 355 (La.1987), State v. Buttner, 489 So.2d 970 (La.App. 4 Cir.1985); however, if the record discloses sufficient evidence to rule on the merits of the claim, the interests of judicial economy justify consideration on appeal. State v. Seiss, 428 So.2d 444 (La.1983), State v. Garland, 482 So.2d 133 (La.App. 4 Cir. 1986).

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) sets out the two-prong test for the effectiveness of counsel. The defendant must carry the burden of showing that his counsel's performance was deficient and that this deficiency prejudiced him. To show prejudice, the defendant must demonstrate that but for the unprofessional conduct, the outcome of the proceedings would have been different. State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir.1986). A claim for ineffective assistance may be disposed of based upon a failure to satisfy either one of the Strickland criteria. If the claim fails to satisfy either criteria, the *525 Court need not address the other. State ex rel Murray v. Maggio, 736 F.2d 279 (5th Cir.1984).
James has failed to show that he was prejudiced either by his attorney's failure to request his attendance at the evidentiary hearing or his failure to request a mistrial.
James is correct that C.Cr.P. art. 831(3) authorized his presence at the hearing regarding the removal of the juror. However, he fails to show any prejudice because of non-attendance. He asserts that he would have moved for a mistrial rather than removal of the juror but he has not shown how he suffered prejudice because the Court did not declare a mistrial or that the removal of the juror was insufficient. This error is harmless, these assignments are meritless.
Darren James' conviction and sentence are hereby affirmed.
AFFIRMED
NOTES
[1] Woods and James were convicted on one of two counts of armed robbery. Facing a possible 99 year sentence for that conviction, Woods agreed to testify against James in the murder trial in exchange for the minimum sentence of 5 years and a reduced appeal bond.
[2] This red and black jacket was identified at trial by Ellen Marie Teal, an 18 year old student from Oklahoma, as belonging to her. She testified the last time she saw it was immediately before the Sugarbowl game which she travelled to New Orleans to attend.