WARD, Judge.
The District Attorney charged Elijah Montgomery with the crime of simple burglary. Montgomery pled not guilty, and the case proceeded to trial before a jury. The jury found Montgomery guilty of the lesser included responsive verdict of attempted simple burglary. The District Attorney then charged that Montgomery was a multiple offender having been twice convicted of felonies before this latest conviction. In response to the multiple offender charge Montgomery admitted that he was a multiple offender and the trial court sentenced him to twelve years at hard labor without benefit of probation, parole, suspension of sentence, or good time.
Montgomery’s counsel has perfected this appeal, contending the trial court erred by imposing an excessive sentence by denying Montgomery the opportunity for parole. Montgomery has filed a brief on his own behalf and he argues there were various errors made by the court and his counsel which led to his conviction.
We agree with counsel; the trial court erred by denying Montgomery the opportunity for parole. We affirm Montgomery’s conviction; there is no merit to his arguments.
Considering first, Montgomery’s arguments as to trial error, the record shows that on February 5, 1983 as Doug Riggs entered his office at N.L. Industries on Baronne Street, he heard a door open and close and the sound of someone running down stairs. Upon inspection of the offices, Riggs found blood stained paper towels, a pair of pliers and a wrench, and a lead bar bearing the initials “N.L.” near a safe that had been pried open. He called the police. Officer Thadeous Zeno of the New Orleans Police Department investigated the scene, took pictures, gathered as evidence the bloody towels, and lifted eight latent fingerprints from the safe. The NOPD crime lab analyzed the blood on the paper towels and classified it as type “0”, and they matched the latent fingerprints with those of Montgomery. Several months later the police arrested Montgomery and took a blood sample from him. It was classified type “0”.
Montgomery’s argument that his trial counsel committed errors that led to his conviction is nothing more than a complaint of ineffective assistance of counsel. Ordinarily those complaints are best left to applications for post conviction relief, State v. Prudholm, 446 So.2d 729 (La.1984), but in this instance those complaints can be *555 resolved by a review of the record, and in the interest of judicial economy, the court can consider such a claim if the record on appeal contains sufficient evidence to address the merits of the claim. State v. Seiss, 428 So.2d 444 (La.1983). Considering the peculiar procedural history of the present case[1] and the fact that an eviden-tiary hearing on defendant’s claims has already been conducted by the trial court[2], we have considered Montgomery’s claims of ineffective assistance of counsel. We find his arguments have no merit and his complaints about his appointed counsel are worthless.
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth a two part test to be used to determine whether counsel was ineffective. The court stated:
First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as “counsel” as guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Id., 466 U.S. at 687, 104 S.Ct. at 2064.
If a defendant makes a claim that he had ineffective assistance of counsel that claim will be denied if he does not show his counsel made serious errors and if he does not show prejudice. State v. James, 555 So.2d 519 (La.App. 4th Cir.1989), writ denied, 559 So.2d 1374 (La.1990). State ex rel. Murray v. Maggio, 736 F.2d 279 (5th Cir.1984). Considering Montgomery’s arguments and applying Strickland, James, and Murray v. Maggio, supra.
Montgomery first contends that Robert Oberfell, his trial attorney, failed to file either a motion to suppress the evidence or a motion to quash, or any other motion regarding items seized from defendant’s home. Quite obviously Oberfell was correct, the evidence which Montgomery claims should have been suppressed was the evidence taken from the offices of N.L. Industries. There was no seizure of evidence either from Montgomery or from anyone else, and there was no reason for counsel to file a motion to suppress because a motion to suppress only pertains to evidence which has been unconstitutionally seized. C.Cr.P. art. 703. As to the motion to quash, there is no basis for that either and Montgomery does not assert any. C.Cr.P. arts. 532 through 534. Montgomery’s argument is worthless.
Montgomery also argues that Ober-fell falsely advised both him and his witnesses telling them that they would not be allowed to testify because their credibility could not be checked. These witnesses were from the State of Washington. Montgomery also claims that two other witnesses who were in court and ready to testify were not called because Oberfell advised him that their testimony would not be accepted and that they, as well as Montgomery, would not be called in order to avoid embarrassment.
After the jury trial, at the hearing in the trial court on Montgomery’s claim, Oberfell testified that he had made an effort to get the Seattle witnesses, but that they would not come to Louisiana. As to the two other witnesses, Oberfell stated that considering the evidence those witnesses would have given, it was better not to call them to testify. The Seattle witnesses simply failed to appear, and the other two witnesses were not called because Oberfell made a reasonable tactical decision not to call them, and we certainly cannot say that *556 renders his assistance ineffective. Montgomery did not show that their testimony would help him, and after counsel interviewed them it is apparent they would not. See Strickland, supra, 466 U.S. at 689, 104 S.Ct. at 2065.
Next, Montgomery contends that Oberfell rendered ineffective assistance because he did not present vital evidence of Montgomery’s innocence even though that evidence was in Oberfell’s possession. That evidence consisted of affidavits from the Seattle witnesses and two gas receipts from Seattle. Montgomery claims this “evidence” would have shown that he was in Seattle on the date of the burglary. He claims Oberfell told him that the affidavits were inadmissible and would not be used and that he, Oberfell, had misplaced the gas receipts. The affidavits were hearsay in that they were written evidence of out-of-court statements which were being offered to show the truth of the matters asserted therein and which rested for their value on the credibility of the out-of-court asserters who were not subject to cross-examination and other safeguards of reliability. State v. Martin, 458 So.2d 454 (La.1984). They were not admissible. Oberfell was correct. As to the gas receipts, Ober-fell testified that defendant had one gas receipt which he had given to police which resulted in the dismissal of an unrelated burglary charge that occurred at another time and date. Oberfell testified that Montgomery said he would give him other receipts but that he never did so. Montgomery’s claim that Oberfell had the gas receipts in his possession but failed to use them to prove that defendant was in Seattle on the day of the burglary is incredible. In a question of credibility, the trial court is in the best position to assess the truthfulness of the witnesses, and the trial court simply did not believe Montgomery.
Continuing, Montgomery complains that Oberfell was ineffective because he did not show Montgomery’s thumb to the jury to show that the thumbprint lifted from the crime scene was not his. The thumbprint from the safe lacked a “white spot” which was present later when the thumbprint was taken from Montgomery after his arrest and visible on Montgomery’s thumb at trial. Montgomery contends that he should have been allowed to show the jury his thumb to show that the white spot was due to a mark which existed since birth. There is no merit to this claim because the jury was able to view Montgomery’s thumbprint after his arrest and compare it with the thumbprint lifted from the safe. The jury must have concluded they were the same. Montgomery’s fingerprints were taken the morning of trial and the prints were the same. Montgomery’s real complaint is that he could not tell the jury he had the mark since birth without taking the witness stand. Oberfell’s tactical decisions not to have Montgomery show his thumb to the jury was on its face a reasonable tactical decision. That action by Oberfell does not meet the first prong of Strickland.
In yet another argument Montgomery claims that Oberfell was ineffective in failing to make an objection to the trial judge’s refusal to instruct the jury as to whether defendant was right-handed or left-handed when the jury requested such an instruction. There is no merit to this contention because there was no basis for an objection. C.Cr.P. art. 806 prohibits the trial judge from charging the jury on the facts of the case; therefore, Oberfell had no grounds to object.
Montgomery also contends Oberfell was ineffective in not investigating whether the blood-stained paper towels and the blood sample taken from him would be categorized by its subtype. He argues that Oberfell should have moved to prevent the analysis of the blood samples unless those samples would be subtyped; and in the event the samples were not Montgomery contends that Oberfell should have moved to suppress the blood sample evidence. This claim has no merit. The officer who analyzed the blood stains and sample testified that there was not enough blood on the paper towels to be subtyped; thus, Oberfell could not have compelled such an analysis. There was no basis for a motion to suppress this evidence because this evidence *557 was not seized in violation of defendant’s constitutional rights. C.Cr.P. art. 703. Moreover, the lack of classification by subtype was a question of the weight to be given the blood sample evidence and not its admissibility.
Next, Montgomery claims that Ob-erfell rendered ineffective assistance by not advising him that he could be found guilty of attempted simple burglary, leading Montgomery to believe it was an all or nothing proposition. Montgomery argues that he knew the burglary was unsuccessful, that the perpetrator could not open the safe, and that he thought no matter who, the perpetrator was not guilty of a burglary. At the evidentiary hearing, Oberfell stated that he had advised Montgomery of all responsive verdicts to the charge of simple burglary including attempted simple burglary. Besides resolving a creditability call in favor of Oberfell, we believe that this claim lacks merit because Montgomery has failed to demonstrate how he was prejudiced or deprived of a fair trial assuming Oberfell did not inform him of all responsive verdicts.
In this last claim related to ineffective assistance of counsel, Montgomery claims that Oberfell was ineffective either in not filing an appeal or in not advising him as to how to proceed with an appeal himself. He argues that Oberfell was aware of his desire to appeal his conviction yet failed to file a motion for appeal. At the evidentiary hearing, Oberfell testified that he and Montgomery discussed an appeal and that he told Montgomery that an appeal was not called for under the circumstances. Oberfell also testified that defendant did not complete payment of the fee he owed. This claim lacks merit because there has been no prejudice to defendant since he was granted an out-of-time appeal by this Court.
In this argument which is similar to a previous one, Montgomery complains that the trial court should have compelled him to display his thumb to the jury. This issue was previously discussed as it related to the claim of ineffective assistance of counsel where it was found to lack merit. It is equally without merit here because neither Montgomery nor his counsel made a request. No one, not even Montgomery, has produced any statute or case as authority which requires the trial court to interject himself into the trial to do this. As a matter of fact, it is prohibited.
In his tenth assignment of error, Montgomery complains that the State knowingly elicited false and misleading testimony from Officer William Sable who gave expert testimony regarding fingerprints. Montgomery asserts that the officer gave false testimony about the use of a magnifying glass, pointers, and fingerprint files to analyze his fingerprints. He now argues that had the items been used to classify the fingerprints, then Officer Sable would have known that the white spot on defendant’s thumb was caused by moisture or a bubble in the ink. Montgomery also claims that Officer Sable’s opinion that the fingerprints found on the safe were Montgomery’s was false because had he used the magnifying glass, pointers, and fingerprint files, the officer would not have reached that conclusion. The alleged inconsistencies pointed out by defendant do not establish that Officer Sable’s testimony was false or misleading in any way. Moreover, it is not the function of an appellate court to assess the credibility of witnesses or to reweigh the evidence unless the trial court’s finding is clearly contrary to the evidence. State v. Rosiere, 488 So.2d 965 (La.1986). Conflicting testimony as to factual matters is a question of the weight of the evidence, not its sufficiency; and the determination of credibility by the finder of fact is entitled to great weight and will not be disturbed unless clearly contrary to the evidence. State v. Jones, 537 So.2d 1244 (La.App. 4th Cir.1989). There is nothing in the record to show that the jury’s determination that Officer Sable’s testimony was credible was clearly contrary to the evidence. This assignment of error is without merit.
The eleventh assignment argues trial court error in not instructing the jury as to whether defendant was left-handed or right-handed when the jury requested such *558 an instruction. No objection was made to the trial court’s refusal to give such an instruction; thus, any error cannot be reviewed. C.Cr.P. art. 841. Moreover, even had an objection been made, defendant’s claim lacks merit because under C.Cr.P. art. 806, the trial court is prohibited from instructing jurors as to the facts of the case. This assignment of error is without merit.
In assignments twelve and thirteen, defendant complains about the failure of the State to have his blood subtyped and of the trial court’s failure to order that his blood be subtyped where his blood sample was compared to that found on the paper towels. Defendant argues that his blood sample should have been subtyped to show whether it was 0 positive or 0 negative. There is nothing in the record showing that any request was made by defendant to have his blood subtyped; thus, the failure issue of the Court’s to order it cannot be reviewed. C.Cr.P. art. 841. Defendant cites no authority, and none is known which obligates the State to have the blood sample subtyped. Any lack of classification or analysis goes to the weight of the evidence, not its admissibility. These assignments of error are without merit.
In assignment fourteen, defendant complains that the trial court erred in admitting the blood-stained paper towels into evidence where there was no showing that those towels were either material or relevant evidence. No objection was made to the introduction of the paper towel into evidence; thus, any error was waived and cannot be reviewed on appeal. C.Cr.P. art. 841. Even had an objection been made, there is no basis for excluding the paper towels. Demonstrative evidence is admissible if it has been established that it is more probable than not that the item sought to be admitted is connected to the case. State v. Smith, 430 So.2d 31 (La.1983). Officer Riggs found the paper towels at the crime scene. Clearly, they were connected to the case and were properly admitted. This assignment of error is without merit.
In the last argument Montgomery says that R.S. 14:27, the statute defining “attempt”, is unconstitutionally vague in that it leaves intelligent persons uncertain of its meaning. No objection was made to the constitutionality of R.S. 14:27; therefore, the issue cannot be reviewed. C.Cr.P. art. 841.
We agree with the argument of Montgomery’s appointed counsel that the trial court erred by imposing a sentence without benefit of parole. La.R.S. 15:529.1 merely says the sentence imposed under the provisions of this Section shall be without benefit of probation or suspension of sentence. Similarly, La.R.S. 15:571.3 permits Montgomery to earn good time. State v. Melancon, 536 So.2d 430 (La.App. 4th Cir.1988), writ den. 582 So.2d 860 (La.1991). For the foregoing reasons, the defendant’s conviction is affirmed; however, his sentence is amended to delete the denial of parole and good time. The sentence is affirmed as amended.
CONVICTION AFFIRMED; SENTENCE AMENDED, AND AFFIRMED AS AMENDED.

. Defendant filed an application for post-conviction relief on March 1, 1985 which was denied without an evidentiary hearing on March 28, 1985. On August 16, 1985, this Court ordered that an evidentiary hearing be held; the hearing was held January 2, 1986, and, again the trial court denied the application.

. On September 11, 1986, this Court granted defendant an out-of-time appeal by construing his application for post conviction relief as an extension of a motion for out-of-time appeal which was filed on May 21, 1984.