|2KLEES, Judge.
Michael Dorsey was charged by bill of information on March 23, 1993, with aggravated crime against nature, a violation of La. R.S. 14:89.1. A lunacy hearing was held on December 7, 1993, and Michael Dorsey was found to be competent to stand trial. After trial on December 16,1993, a twelve-member jury found him guilty as charged. He was sentenced on July 1, 1994, to serve thirty years at hard labor without benefit of parole, probation, or suspension of sentence as a third offender under R.S. 15:529.1.

FACTS:

At trial L.S., the victim, testified that in the early morning hours of January 26,1993, she left her home on Rampart Street to shop for food. As she walked toward St. Claude Avenue on Andry Street, she saw the appellant who was standing nearby with his pants unzipped. She crossed to the other side of the street to avoid him, but he followed her and grabbed her arm. Knowing him from the neighborhood and knowing he had a twin brother, she said, “[DJon’t do that, twin.” The appellant then hit L.S. so hard that her vision in her right eye blurred and'then was lost; he continued to beat her in the face so that she bled profusely, and he dragged her toward a porch at 1035 Andry Street. He forced her down on to the steps and put his penis in her mouth. Just then a police car drove up, and the victim began screaming. The appellant was arrested, and L.S. went to Charity Hospital.
NOPD Officer Donald Pierce testified that on January 26, 1993, he received a complaint that a woman was screaming in the 1000 block of Andry Street. When he arrived there, he saw the appellant standing with his back to the officer; the officer saw him pulling up his pants. Officer Pierce said that when the appellant turned toward him, he saw L.S. who was bleeding from her eyes, nose, ears, and mouth. The officer said no one else was on the street at that time. The appellant first told the officer that L.S. was his girlfriend, but L.S. told Officer Pierce that she had been attacked and forced to perform oral sex. After the appellant was arrested, he told the officer that L.S. was a prostitute who owed him money.
Dr. Tynes Emery Mixon, III, testified that he operated on L.S. at Charity Hospital. He said she came to the emergency room with a right trimalleolar fracture or a fracture of the right Rcheek bone and the facial eminence on that side. The attorney paraphrased the diagnosis by asking if the “whole side of her face was smashed in” and the doctor agreed that it was. The victim’s treatment consisted of having three metal plates placed in her face to repair the fractures.
Michael Dorsey testified that on the night in question he was waiting at the bus stop at Andry Street and St. Claude Avenue with a former fiancee when he saw L.S. walking down the street. He claimed to see a man walking with her who “jumps on her.” According to Dorsey, L.S. called the man “Lewis.” Dorsey said about six men were on the street at that time, but the man who had beat L.S. left. Dorsey walked over to L.S. who had collapsed on the steps and asked her what was wrong; about that time the police arrived. Dorsey admitted he had three prior convictions: one for attempted unauthorized entry into a place of business, one for possession of cocaine, and one for possession of stolen property.

Errors Patent

A review of the record for errors patent reveals none.

Assignment of error

In his sole assignment of error, the appellant contends that trial counsel rendered in-éffective assistance by failing to present an opening or closing argument.
*158 Generally, the issue of ineffective assistance of counsel is addressed by an application for post conviction relief filed in the trial court where a full evidentiary hearing on the issue can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 622 So.2d 845 (La.App. 4th Cir.1993). However, when the appeal record contains enough evidence upon which to base a ruling on the issue, the appellate court will make a determination in the interest of judicial economy. State v. Seiss, 428 So.2d 444 (La.1983); Johnson, 622 So.2d at 849.
Under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant must show that his counsel’s performance was deficient and that the deficient performance prejudiced him. With regard to counsel’s performance, the defendant must show that counsel made errors so serious that counsel was not functioning as “counsel” guaranteed by the Sixth Amendment. As to prejudice, the defendant must show that counsel’s errors were so serious as to deprive defendant of a fair trial, i.e., a trial whose result is reliable. Id., 466 U.S. at 687, 104 S.Ct. at |⅜2064. Both showings must be made before it can be found that defendant’s conviction resulted from a breakdown in the adversarial process that rendered the trial result unreliable. Id. A claim of ineffective assistance may be disposed of on the finding that either one of the two Strickland criteria has not been met. State v. James, 555 So.2d 519 (La.App. 4th Cir.1989), writ denied 559 So.2d 1374 (La.1990). If the claim fails to establish either prong, the reviewing court need not address the other. Murray v. Maggio, 736 F.2d 279 (5th Cir.1984).
While acknowledging that the Louisiana Code of Criminal Procedure allows a defense attorney to waive his opening statement, the appellant argues his attorney was ineffective because he did not present an opening or a closing argument. However, on the morning of trial and out of the presence of the assistant district attorneys and the jury, the defense attorney asked the trial court for a conference where he explained that Dorsey had insisted upon defending himself and had refused to talk his attorney until the morning of trial.[1] Under C.Cr.P. *159 art. 765, defense | ^counsel is not obliged to make an opening statement, and in this case the attorney could not prepare a defense because the client would not consult with him. This Court has held that a defendant must make a showing of specific prejudice in order to claim that the failure of trial counsel to make an opening statement resulted in ineffective assistance of counsel. State v. Cheatham, 519 So.2d 188 (La.App. 4th Cir.1987). Since Dorsey refused to communicate with his attorney prior to trial, he is preempted from arguing that he was prejudiced by his attorney’s refusal to make an opening statement.
As to the failure to make a closing statement, the appellant maintains that his attorney should have argued (1) that there was insufficient evidence of penetration, (2) that there was insufficient evidence of damage to the appellant’s hands and (3) that there were responsive verdicts other than guilty available to the jury. However, this argument is not convincing. The evidence clearly supports a basis for aggravated crime against nature. Defense counsel may not have presented a closing argument for tactical reasons so that the State could not offer a rebuttal argument more damaging to Dorsey’s case than the absence of the defense’s closing argument. State v. Johnson, 551 So.2d 14 (La.App. 4th Cir.1989), writ denied 556 So.2d 56 (La.1990). Furthermore, although the attorney did not make opening or closing statements, the record reveals that he cross-examined each of the three witnesses for the State, made objections during direct examination, and examined the appellant when he took the stand. Therefore, this Court can find that defense counsel acted not as a neutral bystander but as an active participant on the appellant’s behalf at the trial.
In addition, the evidence against the appellant is substantial. L.S. testified that the appellant forcefully put his penis in her mouth. The police officer testified that she was bleeding when he found her, and the doctor testified that the bones on one side of her face were fractured. The appellant was seen by the officer standing in front of L.S. with his pants down. |6Moreover, he was the only person on the street at that time. Based on this evidence, this Court cannot find that the appellant has shown actual prejudice to his case by his attorney’s not giving a closing argument. No error of his attorney deprived this appellant of a fair trial or appeal.
Accordingly for the reasons stated above the conviction and sentence of appellant Michael Dorsey are affirmed.

AFFIRMED.

. The trial court introduced the matter by saying: This is an in-camera discussion concerning Mr. Teissier and Michael Dorsey and any defense in the matter.
The defense attorney then stated:
I've been to see Mr. Dorsey at least four or five times recently. And on none of those occasions has he explained to me what his defense to this crime is. He has given me no witnesses, nor has he given me any explanation for the actions that occurred that day. Yesterday when I went to see Mr. Dorsey, Mr. Dorsey explained to me that he had his defense written down and that would [sic] explain to the jury at the proper time today. I explained to Mr. Dorsey that it was difficult, if not impossible for me to put a defense on if I didn’t know what his defense was, nor whether or not he was going to give me any witnesses.
I explained to Mr. Dorsey that he had another option and that option being that he could represent himself, with me as co-counsel, making sure that things were done properly. Mr. Dorsey at that time stated to me that what he would like to have happen was he would like to be his own attorney and that I would be there to protect his rights as co-counsel, but not lead counsel in the matter. Following that conversation, I went back to this court to explain that position.
Since I felt as though I wasn't going to be lead counsel in a case in which I don’t have a
theory of the case, nor do I have any witnesses, nor do I know what Mr. Dorsey has up his sleeve, with concern to his defense. Now it’s the morning of trial and Mr. Dorsey seems to have lost a little bit of his gusto in defending himself. For the record, I mean, if this court wanted me to go forward, fine. If Mr. Dorsey doesn't want to cooperate fine. I don't have a defense. I don't plan on only participating slightly in the proceedings. But I certainly can’t put on an opening if I don't know what his theory of the case is. [The defense attorney then relates the facts of the case from the prospective of the State.] And that's the only facts that have been revealed to me by Mr. Dorsey. So it puts me in the position of the morning of trial, because the defendant has changed his mind about defending himself, to put on a case in which I have no defense. And if that's what the court wants to have happen, that’s fine. (Trial transcript, pp. 4-5).
After a discussion of the plea bargain the defense attorney advised his client to take, the attorney asked the judge to make sure the defendant knew he had a right to defend himself. The trial court told the defendant of his rights and added for the record that he had had the defendant examined by two psychiatrists to ensure that he was competent to stand trial. Finally, the defense attorney asked, "Do you want to be your own lawyer?” And the defendant answered, "No. I gave you my interpretation of what occurred on the *159 night in question." The attorney answered, "Well, it’s a little late, Michael. It's a little late." (Trial transcript, pp. 7-8).