|-WILLIAM H. BYRNES, III, Chief Judge.
STATEMENT OF CASE
The State indicted Javan Marshall, Alfred D. Williams and Albert Odds[1] on July 26, 2001, with five counts each of attempted first-degree murder, relative to a shootout between the defendants and five New Orleans Police Officers, violations of La. R.S. 14:(27)30. The sixth count of the indictment additionally charged Javan Marshall with being a felon in possession of a firearm, a violation of La. R.S. 14:95.1.
Marshall and Williams pled not guilty at their arraignments on July 31, 2001. On March 6, 2002, Marshall and Williams proceeded to a joint trial on the five counts of attempted first-degree murder. The State nolle prossed counts two and six against Marshall on May 14, 2002. On March 7, 2002, the jury found Marshall guilty of attempted first-degree murder on count three, and guilty of attempted manslaughter on count four. The jury found Williams guilty of attempted first-degree murder on counts one, three and five, and guilty of attempted manslaughter on counts two and four.
ls>On May 7, 2002, the court sentenced Williams to twenty years at hard labor on each of counts two and four, with credit for time served, sentences to run concurrently, and to fifty years at hard labor without benefit of parole, probation or suspension of sentence on each of counts one, three and five, sentences to run concurrently, and consecutively to the sentences on counts two and four. The court denied Williams’ motion for reconsideration of sentence but granted his motion for appeal.
On May 14, 2002, the court sentenced Marshall on count three to fifty years at hard labor, without benefit of parole, probation or suspension of sentence, with credit for time served, and on count four to twenty years at hard labor, with credit for time served, sentences to run consecutively. The court denied Marshall’s motions for post verdict judgment of acquittal and to reconsider sentence but granted his motion for appeal. Also, on that date, the State multiple billed Marshall.
On June 18, 2002, after a full hearing, the judge adjudicated Marshall a second *472 felony offender, vacated his sentence on count three, and sentenced him to fifty years at hard labor, without benefit of parole, probation or suspension of sentence, with credit for time served, sentence to run consecutively to the sentence on count four.
Both defendants have appealed their convictions and sentences. For the reasons set forth herein, we affirm the sentences and convictions of both defendants.
,| «STATEMENT OF FACT
On the night of May 30, 2001, the NOPD was looking for Alfred Williams pursuant to an arrest warrant. The police received information that Williams was riding in a Rollins Cab in the vicinity of Foy Street and Elysian Fields Avenue. Officers Michael Keating and John Barbetti were in the area, and ordered to affect a traffic stop of the cab.
Officers Keating and Barbetti testified that they observed a cab that met the description near the Rite Aid Drug Store on Elysian Fields, and activated the lights on their marked unit. They parked the front end of their unit facing the front of the cab, and exited their vehicle. As Officer Keating approached the driver’s side of the cab, he noticed that the driver was holding a gun, and ordered him to drop it. Officer Keating cautioned Officer Barbetti, who by that time was approaching the passenger side of the cab. The front seat passenger fired upon Officer Barbetti, who returned fire. Then, the driver and the rear seat passenger shot at Officer Keat-ing, who fired back twice. As the shooting started, Officer Dan Anderson arrived on the scene, blocking the rear of the cab with his vehicle. The cab backed into Officer Anderson’s vehicle, and then pulled forward, knocking Officer Keating to the ground. The suspects fled in the cab toward the river on Elysian Fields with Officer Anderson in pursuit, followed by the unit manned by Sgt. Bryan Lampard and Officer Matthew McCleary.
Ms. Diane Banks, an employee of the Rite Aid store on Foy Street and Elysian Fields Avenue, testified that on the night of the incident she was manning the cash register in the front of the store, near the door. From her vantage point, Ms. Banks saw what she described in her original statement as a dark colored car and a police vehicle drive up to the front of the store from opposite directions. Ms. |4Banks testified at trial that the car, a yellow cab, stopped, and she saw an arm with a gun extend from the front passenger seat of the cab and begin shooting at the police. As the police fired back, the cab backed up, and sped from the area out of Ms. Banks’ line of vision.
Officer Dan Anderson testified that on the night of the incident, he responded to information concerning defendant Williams’ presence in the area of the Rite Aid store on Elysian Fields near Foy Street. After Officers Keating and Bar-betti stopped the cab in which Williams was riding, Officer Anderson parked his vehicle behind the cab, to thwart escape. As Officers Keating and Barbetti exited their unit, Officer Anderson saw the left front and rear doors of the cab open, and saw two suspects shooting at the police. Officers Keating and Barbetti sought cover, and exchanged gunfire with the suspects in the cab. As the shoot out began, the cab backed up, and rammed Officer Anderson’s unit, then veered forward knocking down Officer Keating. The cab fled toward the river on Elysian Fields Avenue. Officer Anderson activated his unit’s lights and siren, and pursued the speeding cab. As the chase ensued, the front seat passenger in the cab leaned out of the window, and began to shoot at Officer Anderson. When the cab passed Pleasure Street, Officer Anderson observed the *473 front seat passenger discard a gun, which later proved to be a 9-millimeter Beretta. Officer Anderson radioed dispatch his location, details of the chase and the discarded weapon. Sgt. Bryan Lampard and Officer Matthew McCleary joined in the chase in their marked unit. The cab failed to negotiate a turn onto a side street, hit a tree, and stalled in some shrubbery. Officers Anderson, Lampard and McCleary approached the cab on foot. Defendant Williams exited the front passenger set of the cab, and began shooting at Officers Lampard and McCleary, as he fled on foot. Officers Lampard | Kand McCleary followed Williams in their vehicle, and apprehended him a few blocks from the crash site. Officer Anderson notified other units in the area of the foot pursuit of the fleeing suspects. Officer Anderson and other units arriving on the scene set up a perimeter of the area. In the meantime, the driver of the cab managed to free the cab from the shrubbery, and drive away. The cab crashed, however, into a police unit about a block away. Once other officers secured Williams and Marshall, Officer Anderson retraced the areas of the high-speed chase and initial confrontation to assist in securing the scenes for collection of the discarded weapons. The driver of the cab was transported to Charity Hospital.
Officer Matthew McCleary testified and corroborated Officer Anderson’s testimony.
Sgt. Bryan Lampard, the task force commander of the operation to apprehend defendant Williams, testified that he received information from Detective Brazley concerning Williams’ status as a wanted person and his presence in the area of Elysian Fields Avenue and Foy Street. Sgt. Lampard set up surveillance of that area. Officer Lampard and Officer Matthew McCleary were stationed at Foy and Frenchman Streets, while Officers Keating and Barbetti were across Elysian Fields at Foy Street. Officer Lampard and his team received word from undercover officers that Williams was in the area riding in a cab. Officers Lampard and McCleary drove around the block so their marked vehicle would not alert the suspect to police presence. As Officers Lampard and McCleary drove around the block, they heard gunshots. They observed Officers Keating and Barbetti engaged in a gun battle with the suspects in the cab. Officer Lampard radioed dispatch of the situation, and joined Officer Anderson in vehicular pursuit of the cab. Sgt. Lampard’s testimony of the facts of the chase corroborated Officer 1 (Anderson’s testimony. Officer Lampard added that he and Officer McCleary chased Williams by car and foot, apprehending him in a neighborhood yard. Once he secured Williams and returned to the crash scene, Officer Lampard called for medical assistance for the cab driver, who had been shot.
Detective Joseph Catalanotto investigated the incident, and recovered three semiautomatic handguns discarded by the suspects — one .9 millimeter Beretta, one High Point .45-caliber and one Smith and Wesson .10 millimeter.
Officer Theresa Meunier testified that she and her partner Officer Steve Villere participated in the perimeter search of the area into which defendant Williams fled. As she and Officer Villere stood beside their vehicle parked on Benefit Street, she observed a cab approaching at an excessive rate of speed. Unable to stop, the cab crashed into the Meunier/Villere police vehicle. Officers had to break the windows of the cab to unlock the front doors to remove the two occupants. Defendant Marshall, who was seated in the back of the cab, was arrested and handcuffed. Because the driver of the cab was uncon *474 scious, and bleeding from a gunshot wound, police called for medical assistance.

ERRORS PATENT

A review for errors patent on the face of the record reveals none.
WILLIAMS’ AND MARSHALL’S COUNSELS FIRST ASSIGNMENT OF ERROR: The trial judge’s refusal to grant them a continuance of trial denied them their sixth amendment right to counsel of their choice.
As a general proposition a person accused in a criminal trial has the right to counsel of his choice. State v. Jones, 97-2593 (La.3/4/98), 707 So.2d 975, 977, (quoting State v. Harper, 381 So.2d 468, 470-71 (La.1980)); La. Const. art. I, § 13. 17 However, this right is not absolute, and it must be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system. State v. Trepagnier, 97-2427 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 188, (quoting State v. Leggett, 363 So.2d 434, 436 (La.1978)). Thus, the Louisiana Supreme Court has repeatedly upheld the trial court’s denial of motions made on the day of trial based upon the defendant’s dissatisfaction with appointed counsel. See State v. Seiss, 428 So.2d 444, 447 (La.1983) and cases cited therein.
Although the defendants herein couch this assignment of error in terms of violation of sixth amendment rights, the thrust of their complaint is that the trial court abused its discretion by denying their motions for continuance.
As a general matter, the decision to grant or deny a motion for continuance rests within the sound discretion of the trial judge, and a reviewing court will not disturb a trial court’s determination absent a clear abuse of discretion. La.C.Cr.P. art. 712; State v. Strickland, 94-0025, p. 23 (La.11/1/96), 683 So.2d 218, 229. Whether a refusal is justified depends on the circumstances of the case. In general, a reviewing court will decline to reverse a conviction based on the denial of a motion for continuance absent a showing of specific prejudice. State v. Simpson, 403 So.2d 1214, 1216 (La.1981).
In this case, OIDP attorney Joseph Meyer and non-OIDP counsel Warren McKenna represented Marshall and Williams, respectively. Meyer and McKenna had been representing the defendants for months throughout these proceedings. Both attorneys are experienced litigators and were aware of the trial date, and both were well prepared to proceed with trial on the day appointed.
|sOn the morning of trial, defendants retained private attorney, Donald Ray Pryor, to represent them. Mr. Pryor appeared for trial after voir dire examination of jurors was well under way and asked for a continuance, explaining that he had just been retained, and needed time to prepare for trial. The trial court denied his request, but offered to allow him to sit with defense counsel and the defendants in an advisory position. Mr. Pryor accepted.
Denying the defendants’ motions for continuance, the trial court noted:
... Mr. Pryor approached the bench around 11:30 this morning and said he had just been retained last night to represent [the defendants]. I want the record to reflect that when he approached the bench to tell me this, we had been voir diring this jury for approximately one hour ... I denied you the right to take over the representation of — of both of these men ...
The motion to continue is denied. The jury, as I said, had been in the courtroom for over one hour. Voir *475 dire examination had been going on for over one hour when Mr. Pryor happened to walk in at some time after eleven o’clock this morning. Mr. Prior had no input into the selection made by defense counsel as to whether or not they even wished to have— he had no input into whether or not he wished to have a judge or a jury trial since that was done at some time between 9:30 and 9:40 when they were asked if they were ready for trial and they were asked to — they were dressed to be presented in front of the jury so they would not be clothed in prison clothing in the presence of the jury-
Mr. Pryor approached the bench approximately sometime after eleven o’clock and told me that the defendants’ family (sic) had called him late last night and that he was being retained to represent them. Now, I haven’t received any phone calls from Mr. Pryor at any time prior to sometime after eleven o’clock this morning to tell me that he was involved in representing these [defendants] ... Now, I was home all night last night. I was here this morning at about eight o’clock. No one called this court to say — and I can overlook the fact that the — I don’t know if it’s rudeness or impoliteness or conflict of scheduling which caused you to be elsewhere and not here but at eleven o’clock when lawyers are voir diring the jury, I cannot have a lawyer walk in the courtroom and say all of a sudden, “Now, I’m going to try the case.” Again, I had not heard from |nMr. Pryor about this case until the jury was in this courtroom for over one hour being voir dired.
I also say that — with regard to Mr. Meyer and Mr. McKenna, the record should reflect this case has been in this courtroom since July the 31st of 2001, well over six months, and then after six — and it should also be noted that the trial has been continued on a number of occasions, on several occasions, by the State, by the defense, and sometimes joint motions ... Mr. McKenna has been preparing this case, as has Mr. Meyer ... for [Mr. Pryor] to come in on the morning of trial after the jury is in the courtroom while being selected and say that he is ... going to substitute for [Meyer and McKenna] ... I think is seriously questionable ... it would not be fair to either side today to continue this thing or declare a mistrial or put the thing off when you walk in like this
[[Image here]]
In this case, the trial judge did not abuse his discretion. The defendants were aware of the trial date three months in advance, yet they waited until the evening before trial to retain counsel. Moreover, retained counsel’s appearance in court on the day of trial, after proceedings were well underway, with no explanation for why he did not notify the court of his retention earlier, was an affront to the court. The trial judge weighed the inconvenience of continuance with judicial economy, considering the outstanding careers and competence of appointed counsel as well as retained counsel’s ability to try the case, in the context of the constitutional requirement to safeguard the defendants’ rights and concluded that neither the defendants’ nor the State’s interests would be served by delaying the trial. This assignment is without merit.
WILLIAMS’ PRO ASSIGNMENT OF ERROR
In this pro se assignment, defendant Williams complains he received ineffective assistance of counsel.
*476 Generally, the issue of ineffective assistance of counsel is a matter more properly raised in an application for post-conviction relief to be filed in the trial |incourt where an evidentiary hearing can be held. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Sparrow, 612 So.2d 191 (La.App. 4 Cir.1992). Only when the record contains the necessary evidence to evaluate the merits of the claim can it be addressed on appeal. State v. Seiss, 428 So.2d 444 (La.1983).
The appellate court analyzes ineffective assistance of counsel claims under the two prong test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, a defendant must show that his counsel’s performance was deficient and that the deficient performance prejudiced him. With regard to counsel’s performance, the defendant must show that counsel made errors so serious that counsel was not functioning as “counsel” guaranteed by the Sixth Amendment. As to prejudice, the defendant must show that counsel’s errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. Id. 466 U.S. at 687, 104 S.Ct. at 2064. Both showings must be made before it can be found that the defendant’s conviction resulted from a breakdown in the adversarial process that rendered the trial result unreliable. Id. A claim of ineffective assistance may be disposed of on the finding that either of the Strickland criteria has not been met. State v. James, 555 So.2d 519 (La.App. 4 Cir.1989). If the claim fails to establish either prong, the reviewing court need not address the other. Murray v. Maggio, 736 F.2d 279 (5 Cir.1984).
In this case, Williams claims he was prejudiced by his appointed counsel’s refusal to cross-examine witnesses using the list of questions propounded by his retained counsel.
The transcript of the trial indicates that Mr. Pryor proffered a list of questions he maintained appointed counsel refused to ask during cross-examination of the State’s witnesses. However, that list is not included in the record on appeal. In Williams’ pro se brief argues that the proffered questions were designed to highlight the discrepancies between the police officers’ testimony and lack of evidence linking the discarded weapons to the defendants.
Appointed defense attorneys in this case subjected all of the State’s witnesses to rigorous cross-examination. Mr. Meyer and Mr. McKenna closely scrutinized the testimony of the State’s witnesses, and highlighted contradictions for the jury. Further, defense counsel emphasized any evidence contracting the testimony of the witnesses and the lack of evidence supporting certain points of the State’s case. A review of the record amply supports the fact the defendants received effective assistance of counsel at trial. It is worth noting that although both defendants were tried on five counts of attempted first-degree murder, neither was convicted of all five counts. Marshall was convicted of just one count and Williams was found guilty as charged on only three counts of attempted first-degree murder, further testament to effective assistance of counsel. This assignment is without merit.
WILLIAMS’ AND MARSHALL’S COUNSELS’ SECOND ASSIGNMENT OF ERROR: the trial court abused its discretion in imposing maximum consecutive sentences.
Article 1, Section 20 of the Louisiana Constitution of 1974 provides in pertinent part that no law shall subject any person to cruel, excessive or unusual punishment. A sentence within the statutory limit is constitutionally excessive if it is grossly out of proportion to the severity of *477 the crime or is nothing more than the purposeless imposition of pain and suffering. State v. Caston, 477 So.2d 868, 871 (La.App. 4 Cir.1985).
|1gThe trial court has great discretion in sentencing within the statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982). If there is adequate compliance with La.C.Cr.P. art. 894.1, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Guajardo, 428 So.2d 468, 473 (La.1983). The goal of the statute is the articulation of the factual basis for the sentence, not rigid or mechanical compliance with its provisions; and, where the record clearly shows an adequate factual basis for the sentence, resentencing is unnecessary even where there has not been full compliance with Article 894.1.
Although La.C.Cr.P. art. 883 favors imposition of concurrent sentences for crimes committed as part of the same transaction or series of transactions, a trial court retains the discretion to impose consecutive penalties in cases in which the offender’s past criminality or other circumstances in his background or in the commission of the crimes justify treating him as a grave risk to the safety of the community. State v. Williams, 445 So.2d 1171, 1182 (La.1984). Following their convictions, the trial judge ordered pre-sentence investigation reports on both defendants.
|13In sentencing defendant Alfred Williams on May 7, 2002, the trial judge noted:
[Williams] was found guilty by a jury of three counts of attempted first-degree murder and two counts of attempted manslaughter. It involved a high-speed chase and a shoot-out with members of the [NOPD] back in May of last year ...
... Mr. Williams has a prior arrest for the charge of aggravated rape as a juvenile. He has a conviction as a juvenile for a theft, another arrest for possession of stolen property, another arrest for aggravated assault. As an adult he has an arrest for a simple battery, he has a conviction for a Possession of Marijuana which was reduced from - a marijuana distribution charge. He has an arrest for a simple robbery, he has an arrest for a second-degree murder, which was nolle prosequied ... in 1999 because witnesses failed to appear. He has an arrest for a domestic violence charge. He has an arrest for a burglary of an inhabited dwelling. He has another arrest for simple battery. He has another arrest since this incident for a simple robbery, which was also nolle prosequied ... The court again in considering other background factors looks at his education. He is expelled from school in the 9th grade for again fighting with other students, he drops out of school in the 11th grade ... I also note in the pre-sentence investigation he is single, he is not married. He has fathered two children with two different women and he does indicate that he supports them when he can. I *478 assume, I interpret that to mean he unfortunately does not give anything to the women who are responsible for the caring of his children.
... Due to the subject’s history of violence and his total disregard for human life the Probation Department indicates to me they believe the subject is a danger to society. I wholeheartedly agree.... They also believe that he should be sentenced to a significant period of incarceration at hard labor ...
It should be noted that this incident involved although five counts, five different members of the Police Department. It also involved three separate incidents ... Although you are a young man ... at this point you’ve sort of crossed the mountain top, you’ve crossed the line, you’ve gone to the top of the mountain with regard to criminal activity and there has been a significant amount of criminal activity in your life time and a significant history of violence ...
| uWhen the trial judge sentenced Javan Marshall on May 14, 2002, he reasoned:
... Count three, the defendant was found guilty of the charge of attempted first-degree murder; count four involves the charge of attempted manslaughter.
I do find from the presentence report he is a second felony offender. He has a prior felony conviction for the charge of car jacking. That charge was reduced — I’m sorry. I see a — June 28, 1999, he was arrested ... for car-jacking, armed robbery, and first degree robbery. The D.A.’s office billed him with a charge of car jacking. He pled guilty in February of 2000, was given a two-year DOC sentence. The sentence would have been completed — the total good time release date would have been June 28, 2001. He still would have technically been on supervision by the DOC when this offense occurred in May of 2001.
Prior to the car jacking, he has a conviction for carrying a concealed weapon, 1997, given a suspended sentence and placed on probation. He also has a simple battery conviction, unfortunately, in 1996, battery of a schoolteacher, given a one-year probated sentence. Other simple battery arrests and then the charges here, which occurred in May 2001.
The probation department concludes that he has a disregard for the lives of people in the community, police officers, as is evidence by his prior criminal history. He’s not eligible to receive any suspended sentence or be placed on probation ...
... this is an unfortunate incident. It shows a total disregard for the safety of other people in the community by the reckless and callous manner in which these acts were carried out ... you were involved in shooting in at least two incidents throughout the city, one at the initial stop when the officer goes to the car where there were shots fired at the officers, and this chase throughout the city in the Gentilly. are, again shots were fired ... you did discard the weapon prior to the car crashing. Coupling that with the fact that you’re 21 years old and you have a conviction for a car jacking, ... for carrying a gun, ... for battery on a schoolteacher, ... I do not believe that if you were given any lesser sentence ... that you will not commit other crimes ...
hsSince these incidents involve two separate and distinct incidents, two separate courses of criminal conduct, ... sentences shall be made to run consecutive ...
*479 On appellate review of sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, 959.
In this case, considering Williams’ and Marshall’s lengthy and violent criminal histories, there is no substance to their complaints of excessive sentences. The trial judge did not abuse his sentencing discretion. Moreover, because the trial court found that the defendants committed not one, but three separate crimes, occurring at different times and different places with different victims, there is no error in the order that the defendants’ sentences be served consecutively. This assignment is without merit.
CONCLUSION
For the foregoing reasons, we affirm the convictions and sentences of Javan Mar-shall and Alfred D. Williams.
CONVICTIONS AND SENTENCES AFFIRMED AS TO BOTH DEFENDANTS.

. Albert Odds pled guilty to accessory after the fact on counts one through five, and was sentenced to four years on each count, sentences to run concurrently. Odds was the driver of the vehicle in which Williams and Marshall were passengers.