816 So.2d 885 (2002)
STATE of Louisiana
v.
Kendrick DANGERFIELD & Lorenzo Taylor.
No. 2000-KA-2359.
Court of Appeal of Louisiana, Fourth Circuit.
April 3, 2002.
*890 Harry F. Connick, District Attorney, Anne M. Dickerson, Assistant District Attorney, New Orleans, LA., for State of Louisiana.
Christopher A. Aberle, Mandeville, LA, for Lorenzo Taylor.
Kevin V. Boshea, James A. Williams, Michelle H. Hesni, Davidson S. Ehle, III, Williams Boshea & Ehle, L.L.C., Gretna, LA, for Kendrick Dangerfield.
(Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY and Judge MAX N. TOBIAS, JR.).
JONES, Judge.
Appellants, Kendrick Dangerfield and Lorenzo Taylor, appeal their convictions on charges of one count of aggravated kidnapping, one count of attempted second-degree murder, and one count of attempted first-degree feticide. Both were sentenced to life imprisonment without benefit of parole, probation or suspension of sentence on the aggravated kidnapping charge, and to seven and one-half years on the attempted first degree feticide charge, with their sentences to run concurrently. On the attempted second-degree murder charge, Kendrick Dangerfield received a concurrent twenty-five year prison term, while Lorenzo Taylor was sentenced to a concurrent fifty-year prison term.[1] The district court denied Dangerfield's and Taylor's motions to reconsider sentence.

STATEMENT OF FACTS
On February 14, 1999, Brian Cage and Leroy "Skeeter" Edwards testified at trial that they planned to attend the Bacchus parade. Mr. Cage met Mr. Edwards at the Kenner residence Mr. Edwards shared with his pregnant girlfriend, Troy Robinson. Miss Robinson was not feeling well and did not accompany them to the parade. Miss Robinson's children were with her sister, so she planned to stay at home and rest. Mr. Edwards exchanged vehicles *891 with Miss Robinson and drove himself and Mr. Cage to the parade at approximately 9:00 p.m. Mr. Edwards and Mr. Cage viewed the parade for approximately an hour and then decided to return to Mr. Edwards' residence. En route, Mr. Edwards received a phone call in which the caller told him that his girlfriend had been kidnapped and demanded a $100,000 ransom for her safe return. At first, Mr. Edwards thought the call was a prank. He called his home and when he received no answer, he began phoning and canvassing relatives and friends in an attempt to locate Miss Robinson. About fifteen minutes after the first call, Mr. Edwards received two additional calls from the kidnapper. During the second of those calls, the kidnapper allowed Miss Robinson to speak to Mr. Edwards. Mr. Edwards immediately called the police, and rushed home to find both Miss Robinson and his car missing.
At approximately 2:00 a.m. on February 15, 1999, Detective Michael Cunningham and Officer Kenneth Marroccoli of the Kenner Police Department responded to Mr. Edwards' call concerning Miss Robinson's abduction. Detective Cunningham and Officer Marroccoli surveyed the ransacked residence. As Detective Cunningham was speaking to Mr. Edwards, New Orleans Police Detective Bernard Crowden responded to a call of a shooting at Phillip and Clara Streets in New Orleans. When Detective Crowden arrived on the shooting scene, he learned that Miss Robinson had been shot eight times and was being transported to Charity Hospital. Detective Crowden directed the recovery of evidence from the scene, which included live rounds of ammunition, spent bullet casings, duct tape, a hat and Miss Robinson's shoes and clothing.
Charity Hospital orthopedic surgeon, Dr. Joseph Hsu, testified at trial that he examined Miss Robinson in the early morning hours of February 15, 1999. She had suffered five life threatening gunshot wounds to her extremities; one shattered the bone in her right leg, causing massive blood loss. Dr. Hsu determined that Miss Robinson required emergency surgery; however, he opined that surgery was particularly risky to her unborn child. Dr. Shawn Wengroff of Charity's Obstetrics and Gynecology Department consulted with Dr. Hsu to evaluate and monitor the fetus' condition during the three-hour corrective surgery.
On February 17, 1999, Detective Cunningham testified that he interviewed Miss Robinson at the hospital, and took a taped statement from her in which she related that on the night of February 14, 1999, Mr. Edwards left their residence at about 9:00 p.m. She stated that approximately fifteen minutes after Mr. Edwards left, she heard a knock on the front door. Thinking it was probably a neighborhood child looking to play with her children, Miss Robinson opened the door. As she did so, "Mike" and "Donnie" burst in, brandishing weapons, and demanding that she "show [them] where it's at." As the intruders searched her house, Miss Robinson tried to explain that she did not know what they were talking about. "Mike" ordered "Donnie" to sit with Miss Robinson on the sofa and watch her, as "Mike" continued to ransack the residence. When their efforts proved fruitless, the intruders bound Miss Robinson's arms and covered her eyes with duct tape. However, unbeknownst to the intruders, they left a small opening in the tape over her eyes, thus enabling her to see what was going on around her. "Mike" put a hat on Miss Robinson to hide the tape on her face, retrieved the keys to Mr. Edwards' Cadillac, placed Miss Robinson in the car and drove away, as "Donnie" followed in another vehicle.
*892 Miss Robinson recounted the route "Mike" drove from Kenner into Orleans Parish. The trio stopped at "Donnie's" house at Phillip and Clara Streets. Then they proceeded to Martin Luther King, Jr. Boulevard and South Galvez Street, where "Mike" made a call from a public telephone to Mr. Edwards. As "Mike" made the phone call, "Donnie" stood guard. "Mike" then drove Miss Robinson to the area of South Broad Street and Washington Avenue, where "Mike" stopped and called Mr. Edwards again. This time "Mike" made Miss Robinson speak with Mr. Edwards, to plead for her life. During the course of this call, she realized that "Donnie" had been trailing them in a red Chevrolet Corsica. After the call, the kidnappers drove Miss Robinson to the Melpomene Housing Project. As he drove, "Mike" threatened Miss Robinson's life. Shortly after this threat, a tire on the Cadillac went flat. "Mike" pulled over and "Donnie" drove up alongside him. They decided to drive the Cadillac to Clara and Clio Streets, where they stopped once again. "Mike" proceeded to wipe down the interior surfaces of the Cadillac and then began rummaging in its trunk. The kidnappers told Miss Robinson that she would be transferred to "Donnie's" car. As she watched, the kidnappers walked to "Donnie's" vehicle and conferred. As they returned to the Cadillac, they drew their guns. When she saw the weapons, Miss Robinson jumped from the Cadillac and ran. "Mike" fired upon her with an Uzi, while "Donnie" shot at her with a 9 millimeter weapon. As Miss Robinson ran, a bullet hit her in her right leg. She fell on her stomach and face, and broke her nose. When "Mike" and "Donnie" approached her as she lay face down on the ground, Miss Robinson feigned death. As they stood over her, she heard one of the kidnappers complain that his gun had jammed and the other one lamented that he ran out of bullets. After she was certain the kidnappers had left the area, she crawled to the end of Clio Street, where two young boys found her and summoned help.
Miss Robinson supplied Detective Cunningham with physical descriptions of her assailants. Working from this information, Detective Cunningham compiled two photo lineups from which Miss Robinson identified Kendrick Dangerfield as "Mike" and Lorenzo Taylor as "Donnie".
On March 15, 1999, Mr. Edwards and Mr. Cage drove to the scene of the shooting. As Mr. Edwards drove past the site, a man jumped in front of the car, taunting and goading him to fight. The man told Mr. Edwards that he was the person who kidnapped Miss Robinson. Mr. Cage identified the man as Dangerfield.
On March 29, 1999, acting upon information received from Detective Cunningham, Detective Crowden prepared and executed search warrants for Dangerfield's residence and vehicle. The search of Dangerfield's vehicle produced three shotgun shells, one live 9-millimeter bullet and a photograph of Dangerfield posing with some friends. Based upon the identification made by Miss Robinson from the photo lineup compiled by Detective Cunningham, Detective Crowden prepared an arrest warrant for Dangerfield.
Officer Byron Winbush, the NOPD's firearms expert, reported the results of his examination of three spent cartridges and two live rounds of ammunition collected from the scene at Clara and Clio Streets. He concluded that the two live rounds were 9-millimeter bullets, and that the three 9-millimeter cartridges were fired from the same 9-millimeter weapon. In a supplemental report, Officer Winbush detailed his finding that the bullet recovered during Miss Robinson's surgery was also 9-millimeter caliber.

*893 ERRORS PATENT
A review of the record for errors patent reveals error in Dangerfield's and Lorenzo's sentences for attempted second-degree murder. The sentence for attempted second-degree murder pursuant to La. R.S. 14(27)30.1 is a term of imprisonment at hard labor without benefit of parole, probation or suspension of sentence. In this case, Dangerfield's and Lorenzo's sentences failed to restrict benefits. Thus, the sentences are illegally lenient.
There have been recent changes in the legislature which are encompassed in the Supreme Court decision State v. Williams, XXXX-XXXX, (La.11/28/01), 800 So.2d 790, that address the issue of illegally lenient sentencing. La.Rev.Stat. Ann. § 15:301.1(A) provides in pertinent part that:
.... The failure of a sentencing court to specifically state that all or a portion of the sentence is be served without the benefit of probation, parole or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.
Considering this provision, the Supreme Court in Williams stated:
In instances where these restrictions are not recited in sentencing, La.Rev.Stat. Ann. § 15:301.1(A) deems that those required statutory restrictions are contained in the sentence whether or not imposed by the sentencing court. Additionally, this paragraph self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence which may result from the failure of the sentencing court to impose punishment in conformity with the provided statute. Id. at 798.
In accordance with La.Rev.Stat. Ann. § 15:301.1(A) cited in Williams, we find that the statute above self-activates the correction of an illegally lenient sentence and eliminates the need to remand to the district court for resentencing. Thus, this Court will not disturb the sentences imposed on Dangerfield and Lorenzo.

DANGERFIELD'S ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, Dangerfield argues that the district court erred in denying his motion for a continuance.
La.C.Cr.P. art. 707 requires that a defendant file a written motion for a continuance at least seven days prior to trial, specifically alleging the grounds on which it is based and verified by the affidavit of the defendant or his counsel. Upon written motion and after a contradictory hearing, the court may grant a continuance, but only on a showing that such motion is in the interest of justice. Counsel for Dangerfield made an oral motion to continue prior to calling a jury for commencement of voir dire.
An oral motion for a continuance is permitted when the occurrences that allegedly made a continuance necessary rose unexpectedly. State v. Campbell, 99-0892 (La.App. 4 Cir. 1/3/01), 778 So.2d 636.
The granting or denying of the motion to continue lies within the trial court's discretion. La. C. Cr. P. art. 712. Denial of the motion is grounds for reversal only where the defendant shows both abuse of the trial court's discretion and specific prejudice. State v. Borne, 96-1130 (La. App. 4 Cir. 3/19/97), 691 So.2d 1281, 1284-85.
In this case, the defense counsel sought the continuance on a dual basis. First, that he and his co-counsel were fatigued *894 because of preoccupation with an appeal of a life imprisonment matter and an adoption, both of which were completed the day before. Second, the State had only recently turned over a copy of the police report.
In the colloquy between the court and all counsel, the State opposed the motion, objecting to having Miss Robinson wait another day to have the case heard. Additionally, the prosecutor pointed out that defense counsel had known for some time about the suspects who had been investigated and eliminated. The judge determined that he was not going to grant the motion because of scheduling conflicts.
This Court finds that defense counsel should have been able to prepare a written motion for continuance. Defense counsel admitted that he received the police report "a week and a half ago," belying representations of an unexpected occurrence. Moreover, even though the defense team argued fatigue, it declared itself "prepare[d] to go today." Based on these circumstances, the district judge did not abuse his discretion in denying the oral motion to continue. This assignment of error has no merit.

DANGERFIELD'S ASSIGNMENT OF ERROR NO. 2
In a second assignment of error, Dangerfield argues that the district court erred in denying his motion in limine to exclude evidence found in his car.
The evidence seized from Dangerfield's car included one 9-millimeter live round and three shotgun shells. Dangerfield maintains that the evidence is irrelevant and of no probative value because the 9-millimeter round was not matched to the bullets recovered during Miss Robinson's surgery and that the perpetrators of this crime did not use a shotgun. Therefore, Dangerfield claims that he was prejudiced by the admission of the evidence as it served no purpose other than to confuse the jury.
La. C.E. art. 401 defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 402 provides that all relevant evidence is admissible. If the evidence supports an inference raised by relevant fact, the evidence is admissible. State v. Shepherd, 332 So.2d 228 (La.1976). To be admissible, demonstrative evidence must be identified and authenticated. La. C.E. art. 901; State v. Richardson, 96-2598 (La. App. 4 Cir. 12/17/97), 703 So.2d 1371, 1373. As a foundation for admitting demonstrative evidence, it must be established that the object sought to be introduced is more probably than not connected with the case. State v. Duncan, 99-0778 (La.App. 4 Cir. 4/19/00), 761 So.2d 586, writ den. XXXX-XXXX (La.6/22/01), 794 So.2d 778. In determining the relevance of evidence, much discretion is afforded the trial judge. State v. Sholes, 99-2414 (La.App. 4 Cir. 3/26/01), 782 So.2d 691.
Miss Robinson testified at trial that one of her assailants shot her with a 9-millimeter weapon. The physical evidence corroborates her testimony because 9-millimeter bullets were removed from her body during surgery and spent 9-millimeter casings littered the shooting scene.
We find somewhat problematic the introduction of the shotgun ammunition and the accompanying trial testimony about the shotgun. No evidence that the perpetrators of this crime used a shotgun was introduced at trial. The introduction of the shotgun ammunition was irrelevant to the shooting and we find that the district court erred in admitting it into evidence. However, it appears the error was *895 harmless. The test used in deciding if a trial error is harmless is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
The Chapman standard was later refined in Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), as follows:
Consistent with the jury-trial guarantee, the question [Chapman ] instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand.... The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.
In this case, the State did not argue that the 9-millimeter round and shotgun shells recovered from Dangerfield's car were directly connected to the shooting. Moreover, Dangerfield's testimony at trial denied any knowledge of the 9-millimeter bullet and offered an explanation for the presence of the shotgun shells in his car. Considering Miss Robinson's unwavering testimony that Dangerfield shot her, we find it highly unlikely that the jury convicted Dangerfield on the basis of the ammunition found in his vehicle. This assignment of error is without merit.

DANGERFIELD'S ASSIGNMENT OF ERROR NO. 3
In his third assignment of error, Dangerfield maintains that the district court's erroneous admission of hearsay testimony at trial deprived him of the right to confront and cross-examine his accusers.
Hearsay is a statement made out of court offered as evidence in court to prove the truth of the matter asserted by the statement. La. C.E. art. 801(C); State v. Everidge, 96-2665 (La.12/2/97), 702 So.2d 680, 684. Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability. In order to fall within the definition of hearsay, the statement must be offered to prove the truth of the statement's contents. Id., 702 So.2d at 685.
The relationship between the confrontation clause and hearsay evidence was discussed in California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The Supreme Court recognized that the reasons for excluding hearsay assertions were (1) to insure that the witness will make his assertions under oath, thus impressing him with the seriousness of the matter and subjecting untrue statements to a penalty for perjury; (2) to force the witness to submit to cross-examination, characterized as the "greatest legal engine ever invented for the discovery of truth;" (3) to permit the jury which decides the defendant's fate to observe the demeanor of the witness in making his statements, thus aiding the jury in assessing the witness' credibility. Id. at 158, 90 S.Ct. at 1935.
In the present case, Dangerfield complains that Officer Marroccoli and Detectives Crowden and Cunningham were allowed to repeat for the jury various conversations that had taken place among themselves and with Mr. Edwards and Miss Robinson the night of the kidnapping, as well as conversations with confidential sources.
Defending the admission of the testimony, the State denies that it is "hearsay" *896 because it was not introduced to show the truth of the matters asserted therein, and argues that it was properly admitted pursuant to the res gestae exception to the hearsay rule. Citing State v. Granier, 592 So.2d 883, 888 (La.App. 4 Cir.1991), the State notes that a police officer, in explaining his own actions, may refer to statements made to him by other persons involved in the case. Such statements, which also often fall into the exception, are admissible not to prove the truth of the statement being made, but rather are offered to explain the sequence of events leading to the arrest of the defendant and, as such, are not hearsay. Id.
The purpose served by the admission of such evidence, referred to as the res gestae, is to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. State v. Walker, 99-2217 (La.App. 4 Cir. 10/31/00), 775 So.2d 484, 488-89.
We find that Officer Marroccoli's testimony and portions of Detectives Crowden and Cunningham's testimony fit the res gestae exception. Officer Marroccoli's testimony fits within the exception because his participation in the investigation of the incident spanned a mere few hours, and Detectives Crowden's and Cunningham's testimony fits within the exception because each explained the course of action he took during the first few hours of his involvement in the case.
The Louisiana Supreme Court in State v. Wille, 559 So.2d 1321, 1331 (La.1990) stated:
When an out-of-court statement, such as information received by a police officer during an investigation of a crime, has both an impermissible hearsay aspect and a permissible nonhearsay aspect, the issue of relevancy becomes significantly interrelated with the hearsay issue. If the nonhearsay content of the statement has little or no relevance, then the statement should generally be excluded on both relevance and hearsay grounds. Marginally relevant nonhearsay evidence should not be used as a vehicle to permit the introduction of highly relevant and highly prejudicial hearsay evidence which consists of the substance of an out-of-court assertion that was not made under oath and is not subject to cross-examination at trial.
In State v. Hearold, 603 So.2d 731, 737-38 (La.1992), the Louisiana Supreme Court added:
Generally, an explanation of the officer's actions should never be an acceptable basis upon which to admit an out-of-court declaration when the so-called "explanation" involves a direct assertion of criminal activity against the accused.....Absent some unique circumstances in which the explanation of purpose is probative evidence of a contested fact, such hearsay evidence should not be admitted under an "explanation" exception. The probative value of the mere fact that an out-of-court declaration was made is generally outweighed greatly by the likelihood that the jury will consider the statement for the truth of the matter asserted.
In this instance, we find that inadmissible hearsay was introduced into evidence. Notwithstanding the erroneous admission of that evidence, a verdict will not be reversed if the reviewing court, assuming that the damaging potential of the improperly admitted evidence is fully realized, determines that the error was harmless beyond a reasonable doubt. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); State v. Wille, 559 So.2d at 1332. "Reversal is mandated only when there is a reasonable possibility that the evidence might have *897 contributed to the verdict." Id. (citing Chapman v. California, supra). Factors to be considered include the importance of the evidence to the State's case, the presence or absence of additional corroboration of the evidence, and the overall strength of the State's case. Id.
In this case, Officer Marroccoli, Detectives Cunningham and Crowden, Miss Robinson and Leroy Edwards all testified at trial and underwent thorough cross-examination. Other witnesses and the evidence corroborated their trial testimony. Considering the strength of the State's case owing to Miss Robinson's identification of Dangerfield and Lorenzo as her assailants, it is highly unlikely Dangerfield was convicted on the strength of "hearsay" evidence. This assignment of error is without merit.

DANGERFIELD'S ASSIGNMENT OF ERROR NO. 4
In his fourth assignment of error, Dangerfield contends that the district court erred in failing to grant his challenge for cause. The defense issued the challenge against Ms. Reed serving as a juror because she stated that her religious beliefs precluded her from sitting in judgment of others.
In deciding whether to grant a challenge for cause, the district court must evaluate the juror's responses during the entire voir dire examination. State v. Bourque, 622 So.2d 198, 227 (La.1993). A denial of a challenge for cause based on impartiality is not an abuse of discretion where, after further inquiry and instruction, the potential juror has demonstrated a willingness and ability to decide the case impartially and according to the law and evidence. State v. Copeland, 419 So.2d 899 (La.1982). A trial court has great discretion in matters of a juror's fitness to serve, and its rulings on challenges for cause will not be disturbed unless the record of voir dire as a whole reveals an abuse of that discretion. State v. Roy, 95-0638 (La.10/4/96), 681 So.2d 1230, 1234.
Even assuming that the district court did abuse its discretion, Dangerfield must show prejudice as a result of the district court's error.
Prejudice is presumed when a challenge for cause is erroneously denied and all of the defendant's peremptory challenges are exhausted. One need only show that the trial court erroneously denied a challenge for cause. No additional showing of prejudice is required. State v. Robertson, 92-2660 (La.1/14/94), 630 So.2d 1278, 1280; State v. Richardson, 97-1995 (La.App. 4 Cir. 3/3/99), 729 So.2d 114.
However, under La.C.Cr.P. art. 800, a defendant may complain of a ruling refusing to sustain his challenge for cause even if he had not thereafter exercised all of his peremptory challenges. La.C.Cr.P. art. 800 states that:
A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. The nature of the objection and grounds therefore shall be stated at the time of objection.
The erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law.
Thus, there is no specific allowance or prohibition for assigning as error the improper denial of a challenge for cause when the defendant has not used all of his peremptory challenges. Richardson, 729 So.2d at 119.
*898 In this case, the record reflects that Dangerfield did not exhaust all of his peremptory challenges prior to impaneling the jury.
In State v. Robertson, 630 So.2d at 1280, the Louisiana Supreme Court clearly stated:
Whereas before 1983, a defendant who had been erroneously denied a valid challenge for cause could not even complain about the error on appeal unless he had exercised all his peremptory challenges, under the new version of Article 800, a defendant is now permitted to complain of a ruling refusing to sustain his challenge for cause even if he had not thereafter exercised all of his peremptory challenges. State v. Vanderpool, 493 So.2d 574, 575 (La.1986). See also State v. Copeland, 530 So.2d 526, 535 (La.1988). In such a case, the defendant must be able to show some prejudice in order to overcome the requirement of La.C.Cr.P. art. 921 that "[a] judgment or ruling shall not be reversed by an appellate court because of any error ... which does not affect substantial rights of the accused."
Inasmuch as Dangerfield has not shown that he used all of his peremptory challenges prior to completing the jury panel, he cannot argue that the district court's ruling forced him to accept Ms. Reed as a juror. Moreover, he has not shown any resultant prejudice from the denial of his challenge for cause. This assignment of error has no merit.

DANGERFIELD'S ASSIGNMENT OF ERROR NO. 5 and TAYLOR'S ASSIGNMENT OF ERROR NO. 1
In this assignment of error, both Dangerfield and Taylor argue that the evidence is insufficient to support their convictions. Taylor claims that Miss Robinson's testimony concerning her abductors' identities was so conflicted that it lacked credibility. Dangerfield argues that the identifications made by Miss Robinson were unreliable in that her ability to see her kidnappers was obscured and, further, that the identifications were made weeks after the incident.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986).
In this case, Dangerfield and Taylor object to minor inconsistencies in Miss Robinson's testimony concerning the height and weight of her kidnappers and the length of time between the incident and her identification of the kidnappers.
In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the United States Supreme Court set forth a five-factor test to determine whether an identification is reliable: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. State v. Washington, XXXX-XXXX (La.App. 4 Cir. 7/18/01), 793 So.2d 376. A trial court's determination on the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion. State v. Bickham, 404 So.2d 929 (La.1981).
Miss Robinson did not contradict herself as to the events which took place on the night of February 14, 1999, and the role *899 Dangerfield and Taylor played in those events. She was able to describe those events in detail to the police immediately after the crime. Her identification was based on her clear view of her captors while her attention was focused upon their unmasked faces for fifteen minutes as they ransacked her house looking for money. Miss Robinson testified at trial that even after she was blindfolded, she was able to see what was going on around her and that she recognized Dangerfield from high school. She was certain of her identification at the photographic line-ups and in court. The district court and the jury believed that Miss Robinson identified her captors and the physical evidence corroborated her testimony. This assignment of error is meritless.

DANGERFIELD'S ASSIGNMENT OF ERROR NO. 6
In his final assignment of error, Dangerfield argues that the district court erred in denying his motion for new trial on the basis of insufficient evidence.
As the issue of the sufficiency of the evidence was determined in the previous assignment of error, this assignment of error is without merit.

TAYLOR'S ASSIGNMENT OF ERROR NO. 2
In his final assignment of error, Taylor argues that the district court erred in allowing hearsay testimony concerning a tip from a confidential informant.
The record does not indicate that Taylor's defense counsel lodged a contemporaneous objection to the admission of the alleged hearsay testimony at trial. Hence, the issue has not been preserved for appellate review. La.C.Cr.P. art. 841; State v. Johnson, XXXX-XXXX (La.App. 4 Cir. 2/14/01), 780 So.2d 1140.
Taylor argues in the alternative that if this assignment of error has not been preserved on appeal because of counsel's failure to object, then Taylor received ineffective assistance of counsel.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Reed, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4 Cir. 1986).
Under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced him. With regard to counsel's performance, the defendant must show that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. As to prejudice, the defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. Id., 466 U.S. at 687, 104 S.Ct. at 2064. Both showings must be made before it can be found that the defendant's conviction resulted from a breakdown in the adversarial process that rendered the trial result unreliable. Id. A claim of ineffective assistance may be disposed of on the finding that either of the Strickland prongs has not been met. State v. James, 555 So.2d 519 (La.App. 4 Cir.1989). If the claim fails to establish either prong, the reviewing court need not address the other. State ex rel. State v. Marino, XXXX-XXXX (La.App. 4 Cir. 6/27/01), 804 So.2d 47, citing Murray v. Maggio, 736 F.2d 279 (5th Cir.1984).
*900 Dangerfield argues the district court erred in allowing Detective Cunningham to testify as to the substance of his conversation with the confidential informant. While cross-examining Detective Cunningham, Dangerfield's counsel asked how the detective developed Dangerfield as a suspect in the shooting. Detective Cunningham responded:
... I went to the neighborhood [in which the shooting occurred] on two occasions. I spoke to people that was [sic] standing on the corner, I left my business card with my beeper number ... I talked to [the people standing on the corner] they had said that they had heard that the persons that shot the pregnant female had lived in the area and I left my business card and I said that if anybody got any additional information they can contact me and they can remain confidential. Then I received a phone call from a subject ... they gave me the name Lorenzo Taylor and Kendrick Dangerfield.
Taylor claims that the detective's testimony circumvented the hearsay rule and deprived Taylor of the right to confront and cross-examine the absent informant/ accuser.
One of the primary justifications for the exclusion of hearsay is that the adversary has no opportunity to cross-examine the absent declarant to test the accuracy and completeness of the testimony. The declarant is also not under oath at the time of the statement. Moreover, the confrontation clause of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right... to be confronted with the witnesses against him." U.S. Const. Amend. VI.
The relationship between the confrontation clause and hearsay evidence was discussed in California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). In this case, Detective Cunningham's testimony is impermissible hearsay, and its admission erroneous. Nevertheless, in State v. Wille, supra, citing Chapman v. California, supra, the Louisiana Supreme Court stated that confrontation errors were subject to a harmless error analysis; i.e., the erroneous admission of hearsay evidence mandates reversal of a conviction only when there is a reasonable possibility that the evidence might have contributed to the verdict. Id. The court further stated that the factors to be considered in determining if the error was harmless beyond a reasonable doubt include the following: (1) the importance of the witness' testimony in the prosecution's case; (2) the presence or absence of evidence corroborating or contradicting the witness' testimony on material points; (3) the extent of cross-examination permitted; and (4) the overall strength of the prosecution's case. Id.
At trial of this matter, Detective Cunningham was subjected to extensive and artful cross-examination. Other witnesses corroborated the salient facts of the case elicited during his direct testimony. Considering that the foundation of the State's case against Taylor was Miss Robinson's identification of him as one of the perpetrators, not information received from confidential sources, it does not appear that hearsay testimony contributed to the guilty verdict, and thus did not amount to ineffective assistance of counsel. Accordingly, there is no merit in this assignment of error.

DECREE
For the reasons stated, the conviction and sentences of both Kendrick Dangerfield and Lorenzo Taylor are affirmed.
AFFIRMED
NOTES
[1] Lorenzo Taylor's sentence on count 2 of the indictment is incorrectly reported in the minute and docket entries as a twenty-five year sentence.