MADELEINE M. LANDRIEU, Judge.
|; Christopher E. Buckley was charged by bill of information with seven counts of forcible rape, violations of Louisiana Revised Statute 14:42.1. One count charged him with the forcible rape of a twenty-one-year-old victim in 2003. The other six counts charged him with forcible rape of the thirteen-year-old daughter of his girl *822 friend. At the time these offenses occurred, Mr. Buckley was employed as a New Orleans Police Officer.
Prior to trial, the district court severed Count One (relative to the twenty-one-year-old victim) from the remaining counts and proceeded to trial only on the six counts relating to the minor victim. On the third day of his jury trial, Mr. Buckley entered a Crosby[1] plea as to all counts in the bill of information, pleading guilty but preserving his right to appeal several pretrial rulings. Prior to sentencing, the trial court heard victim impact testimony from several -witnesses, including several alleged victims of unadjudicated sexual assaults by Mr. Buckley. The trial court then sentenced Mr. Buckley to serve thirty-five years at hard labor, without benefit of parole, probation, or suspension of sentence, on each of the |2seven counts, all sentences to run consecutively to each other. He now appeals his conviction arguing that the trial court committed pre-trial errors and that he received a constitutionally excessive sentence.
ERRORS PATENT
A review of the record reveals no errors patent on the face of the record.
ASSIGNMENTS OF ERROR
Mr. Buckley raises the following assignments of error:
(1) The trial court erred by denying his motion for change of venue.
(2) The trial court erred by denying his motion to suppress a compelled statement that was taken in conjunction with an administrative hearing.
(3) The trial court erred by denying his written and oral motions for continuance.
(4) The sentence imposed is unconstitutionally excessive.
VENUE
Prior to trial, Mr. Buckley filed a motion seeking a change of venue, asserting that due to highly publicized federal cases involving NOPD officers, “a New Orleans Police Officer must prove his innocence versus the District Attorney proving his guilt.” The trial court denied this motion.
On appeal, Mr. Buckley contends that the trial court erred by denying the motion to change venue because the pre-trial publicity surrounding his case, pre-trial publicity concerning other high-profile criminal cases pending in federal court against members of the New Orleans Police Department, and the alleged negative public sentiment against the NOPD engendered by these federal cases required a change of venue. The federal cases to which the defendant referred, known locally as the Danzinger Bridge Trial and the Henry-Glover Trial, involved the prosecution |3of police officers for crimes allegedly committed by them in the aftermath of Hurricane Katrina.
A defendant is guaranteed an impartial jury and a fair trial. LSA-Const. art. I, § 16; State v. Brown, 496 So.2d 261, 263 (La.1986). To accomplish this end, the law provides for a change of venue when a defendant establishes he will be unable to obtain an impartial jury or a fair trial at the place of original venue. State v. Bell, 315 So.2d 307, 309 (La.1975).
Louisiana Code of Criminal Procedure article 622 provides, in pertinent part:
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and *823 impartial trial cannot be obtained in the parish where the prosecution is pending.
In unusual circumstances, prejudice against the defendant may be presumed. Unfairness of a constitutional magnitude will be presumed in the presence of a trial atmosphere that is utterly corrupted by press coverage or that is entirely lacking in the solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of the mob. See State v. David, 425 So.2d 1241, 1246 (La.1983). Otherwise, the defendant bears the burden of showing actual prejudice. State v. Lee, 2005-2098, p. 32 (La.1/16/08), 976 So.2d 109, 132.
A change of venue requires proof of more than mere public general knowledge or familiarity with the facts of the case. Lee, supra, p. 33, 976 So.2d at 133; State v. Frank, 99-0553, p. 14 (La.1/17/01), 803 So.2d 1, 15. Extensive knowledge in the community of either the crimes or the defendant is not sufficient by itself to render a trial constitutionally unfair. State v. Sparks, 88-0017, p. 16, (La.5/11/11), 68 So.3d 435, 457. A defendant bears the burden of showing the 14existence of prejudice in the collective mind of the community that makes a fair trial impossible. State v. Clark, 2002-1463, p. 17 (La.6/27/03), 851 So.2d 1055, 1070. Whether a defendant has made the requisite showing of actual prejudice is a question addressed to the trial court’s sound discretion, and its decision will not be disturbed on appeal absent an affirmative showing of error and abuse of discretion. Sparks, 88-0017, p. 17, 68 So.3d at 457; Clark, 2002-1463, p. 17, 851 So.2d at 1071.
In State v. Bell, 315 So.2d 307, 311 (La.1975), the Louisiana Supreme Court outlined some relevant factors to be considered in determining whether a change of venue is warranted:
(1) the nature of pretrial publicity and the particular degree to which it has circulated in the community, (2) the connection of government officials with the release of the publicity, (3) the length of time between the dissemination of the publicity and the trial, (4) the severity and notoriety of the offense, (5) the area from which the jury is to be drawn, (6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant, and (7) any factors likely to affect the candor and veracity of the prospective jurors on voir dire. See, generally, Annotation, 33 A.L.R.3d 17 (1970).
In State v. Lee, supra, the defendant, Derrick Todd Lee, was indicted with first degree murder for a May, 2002 brutal killing of a twenty-two-year-old female in East Baton Rouge Parish. Because DNA evidence allegedly linked Mr. Lee not only to this murder, but also to several other recent murders of young women in the area, it was widely speculated that Mr. Lee was the notorious South Louisiana serial killer that had preyed upon the local community for the past several years. Due to the extraordinary pretrial publicity surrounding the case, Mr. Lee moved for a change of venue. The trial court denied the motion, and Mr. Lee was ultimately convicted and sentenced to death. Id., p. 1, 976 So.2d at 115.
|fiOn direct appeal to the Louisiana Supreme Court after Mr. Lee’s conviction, the Court held that the trial court had not abused its discretion by denying the motion to change venue. The Supreme Court noted that Mr. Lee’s trial counsel had filed into evidence over five thousand pages of printed media reports and newscast transcripts published between July 2002 and January 2004 that related to the South Louisiana serial killer. The Court further *824 noted that 123 of the 125 potential jurors were at least vaguely familiar with the case, and that the trial court had excused thirty-two percent of them for cause due to their inability to put aside them pretrial exposure to publicity. Notwithstanding this evidence and the widespread media attention surrounding the case, the Supreme Court considered the Bell factors and concluded that Mr. Lee had failed to demonstrate “that the undoubtedly high press coverage of the investigation was sufficient to alter the ‘candor and veracity’ of the jurors’s answers during voir dire examination.” Id., p. 40, 976 So.2d at 137. The Supreme Court further stated:
As we have previously observed, “the mere existence of any preconceived notion as to the guilt or innocence of the accused, without more, is insufficient to rebut the presumption of the juror’s impartiality.” State v. Clark, 851 So.2d at 1071.

Id.

In the instant case, Mr. Buckley has presented no evidence of pretrial publicity either in his case or in the two federal criminal prosecutions of NOPD officers arising out of Hurricane Katrina. While he refers to the Danzinger Bridge trial[2] and the Henry Glover trial[3], he fails to cite with particularity any evidence showing actual prejudice against him and/or the NOPD in the collective mind of the community such that he would be unable to receive a fair trial on charges of | ^forcible rape. We therefore conclude that the trial court did not abuse its discretion by denying Mr. Buckley’s motion for change of venue.
MOTION TO SUPPRESS STATEMENT
Count One of the indictment in this case involves the forcible rape of the twenty-one-year-old victim. Mr. Buckley was initially charged with this crime in 2003. In connection with that charge, Mr. Buckley gave a statement to the police that was the subject of a motion to suppress hearing in that case.[4] The trial court in that case denied the motion to suppress, concluding that the statement was admissible.
The bill of information in the instant case encompassed that charge as Count One, and the 2003 case was then nolle prosequied three days after this bill was filed against Mr. Buckley. After jury selection in the instant case, the State filed a notice of intent to use Mr. Buckley’s 2003 statement to police in the State’s opening argument at trial. Mr. Buckley now challenges the admissibility of his statement.
At the time he gave the 2003 statement, Mr. Buckley was a New Orleans Police officer and was the subject of both a criminal investigation and an administrative investigation. Mr. Buckley contends that the statement was taken in an administrative investigation, and therefore, was inadmissible in his criminal trial.
|7Lt. Troy Savage testified that he took a criminal statement from Mr. Buckley, and that Mr. Buckley was advised of his Mi *825 randa[5] rights prior to giving the statement. Lt. Savage represented that he was handling the criminal investigation into sexual assault while the Public Integrity-Division was doing its own internal investigation as to a potential violation of department regulations. Lt. Savage stated that in criminal investigations, in addition to being Mirandized, police officers are read the “policeman’s bill of rights.” Lt. Savage said an officer is not compelled to give a statement in a criminal investigation. In an administrative investigation, however, an officer is compelled to participate and give statements.
Mr. Buckley’s trial counsel in the instant case admitted during the motion hearing that he was also representing Mr. Buckley in 2003 when he gave the statement in question; that he was present when Mr. Buckley gave the statement; and that Mr. Buckley had waived his rights prior to giving the statement. Mr. Buckley contends that, under Garrity v. State, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), his statement was not freely and voluntarily given as it was taken pursuant to the “policeman’s bill of rights,” and, therefore, could not be used against him in a criminal investigation.
This court set forth the applicable law on the admissibility of inculpatory statements in State v. Butler, 2004-0880 (La.App. 4 Cir. 1/12/05), 894 So.2d 415. The Butler court stated that before the State can introduce an inculpatory statement into evidence, it must affirmatively show that the statement was free and voluntary and was not the result of fear, duress, intimidation, menace, threats, ^^inducements or promises. Id. 2004-0880, p. 4, 894 So.2d at 418; La. R.S. 15:451; La.C.Cr.P. art. 703(D). A trial court’s ruling on the voluntariness of an inculpatory statement is entitled to great deference and will not be disturbed on appeal unless there is no evidence to support the ruling. State v. Davis, 2009-0438, p. 22 (La.App. 4 Cir. 1/13/10), 30 So.3d 201, 213; State v. Williams, 2007-0700, p. 8 (La.App. 4 Cir. 2/13/08), 977 So.2d 1101, 1110.
Louisiana Revised Statute 40:2531 clearly contemplates separate and distinct administrative and criminal investigations. Louisiana Revised Statute 40:2531(B) covers a law enforcement officer’s rights in an administrative investigation. Subsection (B)(5) provides that no statement made by the officer during an administrative investigation shall be admissible in a criminal proceeding. Subsection (B)(7) provides the procedures and time delays for internal departmental investigations, and specifically states that nothing within this paragraph “shall limit any investigation of alleged criminal activity.”
The issue before us is whether the State proved that Mr. Buckley’s statement to Lt. Savage was given freely and voluntarily in a criminal investigation, or whether it was inadmissible because the reading of the “policeman’s bill of rights” made the statement tantamount to one given in an administrative investigation. In Garrity, supra, the Court held that statements given by New Jersey police officers during an administrative investigation violated their Fifth Amendment right against self-incrimination. In that case, the officers were warned that anything they said might be used against them in a State criminal proceeding; that they had the right to refuse to answer questions if the disclosure would tend to incriminate them; and that if they refused to answer, they would be subject to removal from office under |flNew Jersey’s forfeiture-of-office statute. The statements were deemed compelled, and thus inadmissible at trial, *826 because the officers faced departmental discipline (including termination) as a result of invoking their constitutionally-protected right not to respond to questioning.
In the instant case, there is no question that before giving his statement Mr. Buckley was advised of his Miranda rights, in the presence of his attorney, and that he knowingly and intelligently waived those rights. However, Lt. Savage testified that as part of his criminal investigation into the allegations against Mr. Buckley, he also advised Mr. Buckley of his rights under the “policeman’s bill of rights,” La. R.S. 40:25S1(B), which included informing him that no statement made by him during the course of an administrative investigation would be admissible in a criminal proceeding.
The trial court determined that the statement was given to police relative to a sexual assault investigation simultaneous with an internal NOPD investigation. The trial court stated that it had reviewed the waiver-of-rights-of-arrestee form memorialized in the police report, as well as Mr. Buckley’s statement, which showed the rights-of-arrestee form number and the colloquy regarding the waiver of rights. The court found that due to the waiver of his rights, Mr. Buckley provided his statement pursuant to a criminal investigation. The trial court concluded that Mr. Buckley’s statement was admissible because he had waived his Miranda rights with his counsel present, and that “it is of no moment whether or not there was a simultaneous policeman bill of rights read to Mr. Buckley because, first and foremost, he signed and waived his rights pursuant to the rights of arrestee form.” We agree.
| inThe instant case is distinguishable from Garrity. In Garrity the police officers were advised that anything they said in the investigation into a traffic ticket fixing scheme might be used against them, that they had a privilege to refuse to answer a question if it would tend to incriminate them, but that such refusal would subject them to removal from their employment. Thus, the police officers in Garrity were compelled to give their respective statements upon threat of termination. The police officer’s bill of rights in the instant case, found in Louisiana Revised Statute 40:2531(B), does not contain a corresponding threat to an officer’s employment in the event he refuses to answer an incriminating question.
Considering the totality of the circumstances, we find no error in the trial court’s ruling that Mr. Buckley’s statement was given to Lt. Savage freely and voluntarily, and not as the result of intimidation, threats, inducements, or promises.
DENIAL OF CONTINUANCE
In his third assignment of error, Mr. Buckley argues that the trial court erred by denying both his written and oral motions for continuance.
Prior to trial, Mr. Buckley had filed a written motion for continuance asserting that during orientation remarks made to the jury pool, the judge had made certain comments which had tainted the entire jury pool such that Mr. Buckley would be unable to select a fair and impartial jury. On the morning of trial, Mr. Buckley made an oral motion to continue asserting three other grounds: (1) that the State had amended the bill of information, which had made him unable to understand the charges against him; (2) that the State had notified defense counsel at midday on the Friday before trial that it planned to sever count one and proceed to trial only on counts two through seven; and (8) the late disclosure of exculpatory | n evidence— the State’s filing on Friday, May 6, 2011, of a report from the Louisiana State Police that underwear in a rape kit not previously tested for the presence of seminal fluid *827 had been tested the previous week and found negative for seminal fluid. The trial court denied the motions, addressing each ground separately.[6]
“A motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor.” La.C.Cr.P. art. 712. A trial court’s decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court, and a reviewing court will not disturb such determination absent a clear abuse of discretion. State v. Reeves, 2006-2419, p. 73 (La.5/5/09), 11 So.3d 1031, 1078-1079; State v. Ford, 2009-0392, p. 3 (La.App. 4 Cir. 10/21/09), 24 So.3d 249, 252. In addition, a reviewing court should generally decline to reverse a conviction even on a showing of an improper denial of a motion for a continuance absent a showing of specific prejudice. Reeves, 2006-2419, p. 73, 11 So.3d at 1079.
Generally, a motion for continuance shall be in writing and specifically allege the grounds upon which it is based, and it shall be filed at least seven days prior to the commencement of trial. La. C.Cr.P. art. 707. However, upon written motion at any time and after contradictory hearing, a trial court may grant a continuance upon a showing that granting the motion is in the interest of justice. Id. An oral motion for a continuance is permitted when the grounds that allegedly made the continuance necessary arose unexpectedly. State v. Dangerfield, 2000-2359, p. 7 (La.App. 4 Cir. 4/3/02), 816 So.2d 885, 893.
h2In the instant case, Mr. Buckley filed a written motion for continuance asserting only one ground — that during orientation of the jury pool, prospective jurors had been tainted by incendiary remarks made by the trial court judge. He alleges that the jury pool was tainted by the trial judge advising prospective jurors during general jury pool orientation that they should remove their juror badges before leaving the building at the end of the day because associates of any defendant could be around the courthouse, noting that once a juror left the courthouse he/she was “on [his/her] own.” Mr. Buckley’s counsel advised the trial court that a mistrial was declared in a second degree murder case in another section of the courthouse after these comments made during juror orientation surfaced during voir dire in that case.
In requesting a continuance in the instant case, Mr. Buckley’s counsel presented a partial transcript of the pertinent voir dire in that other trial to the court.[7] During the voir dire in the other case, potential jurors were questioned as to whether the judge’s comments during orientation had resulted in them having concerns for their personal security. Enough of them replied in the affirmative to cause the trial court to grant the defendant’s motion for mistrial. The common thread among the juror responses in that case was that the comment related to their safety upon leaving the courthouse. More than one juror indicated that the fact that they were being questioned to sit on a jury for a homicide case had factored into their concerns for their personal safety.
In the instant case, the record reflects that trial court judge reviewed the transcript of the prior proceeding and determined that the entire jury pool was not *828 tainted. The court allowed the State and the defense the opportunity to 11-¡individually question the jury panel on this issue during voir dire if they chose. A jury was selected, and the State presented considerable evidence before Mr. Buckley pleaded guilty. There is no indication in the record before us that the jury in this case was prejudiced against Mr. Buckley as a result of the comments made to them during orientation.
Considering the totality of the circumstances, the trial court did not abuse its discretion in denying Mr. Buckley’s written motion for continuance.
Regarding his oral motion for continuance made on the morning of trial, Mr. Buckley first contends that due to amendments to the bill of information, neither he nor his counsel knew exactly what Mr. Buckley was charged with. This argument is without merit. The State filed a nolle prosequi of the original bill of information, which charged Mr. Buckley with four counts of forcible rape, and then filed a new bill of information charging him with seven counts of forcible rape. Thereafter, the State amended the bill of information to reflect that three of those seven counts were for forcible rape by oral sexual intercourse, rather than by vaginal intercourse.
The nolle prosequi and the amendments to the bill occurred more than seven days before trial. These grounds did not arise unexpectedly, and if he believed it was warranted, Mr. Buckley’s counsel could have then timely filed a written motion for continuance as provided for in Louisiana Code of Criminal Procedure article 707, rather than waiting until the morning of trial. Therefore, trial court properly could have denied Mr. Buckley’s oral motion for continuance based on the ground that it had not been timely filed in writing. However, the trial court addressed the merits of the motion, noting that defense counsel had previously 114raised this issue. The trial court stated on the record that due to Mr. Buckley’s previous claim that he did not understand the charges against him, the trial court had read the amended bill of information to Mr. Buckley and his counsel at an earlier date in open court, ensuring that Mr. Buckley understood the charges against him.
We find that the trial court did not abuse its discretion in denying Mr. Buckley’s oral motion for continuance on this ground.
Secondly, Mr. Buckley contends that the State did not timely notify him of the severance of counts for trial. The State severed count one (concerning the adult victim) from the remaining counts (concerning the juvenile victim) and notified Mr. Buckley that it intended to try Mr. Buckley only on counts two through seven. Mr. Buckley fails to show how he was prejudiced by such action. As the State pointed out, its action relieved Mr. Buckley of the burden of defending against an accusation by one of the two victims. The trial court did not abuse its discretion by denying Mr. Buckley’s motion for continuance based on this ground.
Third, Mr. Buckley contends that the late disclosure of a lab report prejudiced him. However, the evidence disclosed was exculpatory evidence. On the Friday before trial, the State produced a State Police report showing that no seminal fluid was found on underwear in a rape kit apparently obtained by police from the minor victim. The trial court noted that the new evidence benefitted Mr. Buckley. The trial court did not abuse its discretion by denying the motion for continuance on this ground.
Accordingly, we find no merit to this assignment of error.
EXCESSIVENESS OF SENTENCE
11sIn his final assignment of error Mr. Buckley argues that his sentence is *829 unconstitutionally excessive. Mr. Buckley was sentenced to serve seven consecutive sentences of thirty-five years at hard labor without benefit of parole, probation, or suspension of sentence, totaling two hundred forty-five years. The sentencing range for a conviction of forcible rape is five to forty years at hard labor, with at least two years of the sentence to be served without benefit of probation, parole, or suspension of sentence. La. R.S. 14:42.1. Following sentencing, Mr. Buckley filed a written motion to reconsider sentence asserting that the sentence was unconstitutionally excessive and that the trial court had failed to consider the mitigating circumstances. The trial court denied the motion to reconsider that same date.
Louisiana Constitution article I, § 20 explicitly prohibits excessive sentences. Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Every, 2009-0721, p. 7 (La.App. 4 Cir. 3/24/10), 35 So.3d 410, 417. A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Ambeau, 2008-1191, p. 9 (La.App. 4 Cir. 2/11/09), 6 So.3d 215, 221. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Galindo, 2006-1090, pp. 15-16 (La.App. 4 Cir. 10/3/07), 968 So.2d 1102, 1113.
In reviewing a claim that a sentence is excessive, an appellate court must determine whether the trial judge has adequately complied with the statutory guidelines in Louisiana Code of Criminal Procedure article 894.1 and whether the 11fisentence is warranted under the facts established by the record. State v. Wiltz, 2008-1441, p. 10 (La.App. 4 Cir. 12/16/09) 28 So.3d 554, 561. If adequate compliance with Louisiana Code of Criminal Procedure article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious offenders. State v. Bell, 2009-0588, p. 4 (La.App. 4 Cir. 10/14/09), 23 So.3d 981, 984. Louisiana Code of Criminal Procedure article 881.4(D) expressly states that an “appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed.”
Although Louisiana law favors concurrent sentences for crimes committed as part of a single transaction, a trial judge retains the discretion to impose consecutive sentences on the basis of other factors, including the offender’s past criminality and violence in the charged crimes. State v. Dempsey, 2002-1867, p. 5 (La.App. 4 Cir. 4/2/03), 844 So.2d 1037, 1040, citing State v. Thomas, 98-1144, p. 1 (La.10/9/98), 719 So.2d 49; La.C.Cr.P. art. 883.[8]
In the instant case, the seven forcible rapes were perpetrated by a New Orleans Police officer, one upon a twenty-one-year-old female, the other six upon a thirteen-year-old female who was the daughter of his girlfriend. The six rapes of the thir *830 teen-year-old victim occurred on three days within a one-week period, and obviously constituted parts of a common scheme or plan. Thus, under Louisiana Code of Criminal Procedure article 883, the sentences | l7for those offenses “shall be served concurrently unless the trial court expressly directs that some or all of them be served consecutively.” Here, the trial court did expressly direct that those sentences be served consecutively, setting forth adequate reasons therefor.
Following Mr. Buckley’s plea, the court heard victim impact testimony over the course of two days. The two victims testified as to how these events had drastically disrupted their lives, and how they were still being impacted at the time they testified. The father and step-mother of the minor victim testified about the difficulty they have had in keeping her on the right path following the rapes. Three other individuals also testified that they had been sexual abuse victims of Mr. Buckley when they were minors. A common theme throughout all of their testimonies was that Mr. Buckley had taken advantage of his position as a law enforcement officer and the youth of his victims to perpetrate these crimes.
In sentencing Mr. Buckley, the trial court noted that it had received and had reviewed a pre-sentence investigation report; it had presided over all of Mr. Buckley’s pretrial matters; and it had listened to three days of testimony (trial testimony and victim impact testimony) prior to sentencing. The trial judge stated that she found Mr. Buckley’s actions to be beyond the realm of common decency. She further stated that Mr. Buckley’s actions in taking advantage of the minor victim, in particular, were a disgrace to his badge, and that he was a disgrace as a human being and as an adult. The trial court, therefore, sentenced Mr. Buckley to thirty-five years at hard labor, without benefit of parole, probation, or suspension of sentence on each count, with the sentences to run consecutively, for a total of two hundred forty-five years.
11sMr. Buckley filed a motion to reconsider sentence, which the trial court denied, stating that she had thought very long and hard before sentencing Mr. Buckley, and had considered the mitigating circumstances. The trial court emphasized that Mr. Buckley had chosen to commit these heinous acts while he was wearing a badge and a uniform. The trial court stressed that Mr. Buckley had been charged with upholding and enforcing the law, and had been entrusted with the responsibility of taking care of the city, yet he had committed these terrible crimes.
Mr. Buckley’s consecutive sentences, which are to be served without the benefit of parole, probation, or suspension of sentence, effectively constitute a sentence of imprisonment for the remainder of his natural life. Considering the facts and circumstances of the instant case, it cannot be said that the sentence as a whole makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, or is grossly out of proportion to the severity of the crime. Nor can it be said that, when the crime and punishment are considered in light of the harm done to society, Mr. Buckley’s total sentence shocks the sense of justice.
We there find no merit to this assignment of error.
CONCLUSION
For the foregoing reasons, Mr. Buckley’s convictions and sentences are affirmed.
AFFIRMED

. State v. Crosby, 338 So.2d 584 (La.1976).

. United States v. Bowen, CRIM.A. 10-204, 2012 WL 711901 (E.D.La. Mar. 5, 2012).

. United States v. Warren, CRIM. 10-154, 2010 WL 3923167 (E.D.La. Sept. 28, 2010) vacated and remanded sub nom. United States v. McRae, 702 F.3d 806 (5th Cir.2012).

. The record does not contain the transcript of the 2003 statement by Mr. Buckley which the trial court in the instant case reviewed in making its decision. Neither the transcript of the motion to suppress hearing, nor the minute or docket master entries from the date of the hearing, reflects that the transcribed statement reviewed by the trial court at the hearing was introduced in evidence or introduced for record purposes.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Mr. Buckley entered a plea of guilty pursuant to State v. Crosby, 338 So.2d 584 (La.1976), under which a defendant’s right to appeal is preserved. Although Mr. Buckley did not expressly reserve his right to appeal the trial court’s denial of his oral motion for continuance, we nevertheless address it.

. That transcript is part of this record.

. Louisiana Code of Criminal Procedure article 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.